[Crim. No. 8304. Second Dist., Div. Two. Apr. 3, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED TORRES, Defendant and Appellant.

William Strong and Dorathy K. Davis for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert H. O'Brien, Deputy Attorney General for Plaintiff and Respondent.

FOX, P. J.—Defendant Alfred Torres, charged with the murder of one John Rosales,[1] was found guilty of murder in the first degree by the court sitting without a jury. Defendant, who was sentenced to life imprisonment, appeals on the following grounds: (1) the evidence is insufficient to sustain a finding of first degree murder; (2) he was not properly represented by counsel; and (3) he was not advised as to the effect of his waiver of trial by jury.

The procedure leading up to defendant's trial and conviction was as follows: Defendant appeared at his arraignment and entered his plea of "not guilty" while accompanied by an attorney, although that attorney was not the one who represented him at the trial. At the outset of the trial, defendant, with the approval of his counsel, waived his right to a jury trial. By stipulation the case was submitted on the transcript of the preliminary hearing, both sides reserving the right to offer additional evidence at the trial, which was thereupon continued until a later date. At the trial the People presented six witnesses; the defense three, including

---

[1]Hereinafter also referred to as Johnny or decedent.

the defendant.[2] The testimony covered approximately 115 pages.

 During the evening and early morning of October 17, 1961, defendant and some friends spent several hours at a bar, during which time they did considerable drinking. They then drove around for some time ending up at the home of one of the girls (Diana) at around 4:30 or 5 o'clock in the morning. Later that morning the group drove to Wilmington, and after taking care of some personal matters, "cruised around" for a while, during which they ran on to John Rosales, whom two of the group knew, and picked him up. Defendant and Johnny were not acquainted. The group then returned to Diana's house. There was drinking in the car and Johnny had something to drink after he got in.

Soon after the group reached Diana's place, defendant and Johnny got into an argument over whether the latter would be permitted to wear one of defendant's hats. This resulted in a fist fight in the house. Defendant testified he "got real mad." Diana told them not to fight in the house; to go outside. She succeeded in stopping this fight.

As defendant went out of the house he picked up a knife as he went through the kitchen and put it in his pocket. The girls made him put the knife on a window ledge. Defendant said something to Johnny about fighting again. Although Johnny "turned back" they were at it again in a couple of minutes in the front yard. This second fight lasted five or six minutes. Diana broke it up by telling defendant that if he didn't stop she would hit him with a 7-Up bottle that she had in her hand. He was the one that wanted to keep on fighting.

After the second fight was stopped, one of the girls (Olga) took Johnny by the arm down the steps from the front yard to the street. They walked down the street, "about a house away from Diana's" place, where they were talking. Another member of the group had been talking to defendant. Then defendant started running down the steps to the street waving a knife in his hand. This was three or four minutes, "maybe five" after the second fight had been stopped. Defendant ran toward Johnny. Olga apparently got between them, so defendant got hold of her sweater and threw her down on the sidewalk, and stabbed Johnny in the lower part of the throat. Johnny started trying to protect himself.

---

[2]Defendant admitted a prior felony conviction for burglary.

Defendant then stabbed him in the thigh, and "behind the head somewhere," and, as Johnny was going down, defendant "got him again." Johnny exclaimed, "Oh, God help me." Defendant asked, "Do you want some more?" When defendant stabbed Johnny in the throat, Olga "got in" and "pushed him aside." When he was through stabbing Johnny, he threw the knife in the bushes and walked toward an alley. However, he was back in Diana's house in 10 or 15 minutes where he was taken into custody.

Defendant denied having stabbed Johnny and stated to the officers that he didn't know him. The officers stated defendant was not under the influence of alcohol; that he walked and talked in a normal manner. He told one of the officers that he had not been drinking and that he had not taken any stimulant or depressant in pill form.

At the trial defendant told a story of drinking beer, whiskey and wine the night before and during that day, and of having taken Red Devils, which make everything slow down and seem different.

We must view the evidence in the light most favorable to the successful party in the trial court. When so viewed, it is our opinion that the evidence and the inferences that the trial court could reasonably draw therefrom are sufficient to sustain the finding of first degree murder.

An unlawful killing that is wilful, deliberate and premeditated and done with malice aforethought is murder of the first degree. (Pen. Code, §§ 187, 189.)

Malice required for murder may be express or implied. "It is expressed when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188.) Implied malice does not require a preexisting hatred or an enmity toward the victim. (*People* v. *Bender*, 27 Cal. 2d 164 [163 P.2d 8].) The manner in which a victim is killed and the circumstances attending the killing may indicate the presence of the malice aforethought required for establishing murder. (*People* v. *Bender, supra.*)

As basis for inferring malice aforethought, the record shows: Defendant and decedent had two fist fights. After the first fight, which took place inside the house, defendant emerged from the house with a knife in his pocket that he had taken from the kitchen as he came out. He manifested

an intention to continue fighting; at the insistence of third parties, defendant placed the knife (temporarily) on a window ledge. The second fist fight then took place. After that, decedent left the scene and had begun walking down the street with Olga. Defendant ran after him, waving the knife in his hand. Several minutes elapsed between the termination of the second fight, and the time defendant came down the street after Johnny. He ran up to decedent, threw Olga, who was apparently attempting to protect him, down on the sidewalk, stabbed him several times, and asked if he "wanted some more." He told one of the others present that she had better shut her mouth or she might get the same. The number of times defendant stabbed his defenseless victim indicates "an abandoned and malignant heart" (Pen. Code, § 188) and justifies an inference of implied malice. (*Id.*) These facts and circumstances amply support an implied finding that this was an unlawful killing "with malice aforethought." (Pen. Code, § 187.)

We come now to the question of whether defendant's acts in killing decedent were wilful, premeditated and deliberate. " ' . . . Deliberation means careful consideration and examination of the reasons for and against a choice or measure.' The verb 'premeditate' means 'to think over, and revolve in the mind, beforehand; to contrive and design previously.' " (*People* v. *Honeycutt,* 29 Cal.2d 52, 61 [172 P.2d 692].) "Deliberation, premeditation and wilfulness may be inferred from the proof of such facts and circumstances as will furnish a reasonable foundation for such a conclusion." (*People* v. *Eggers,* 30 Cal.2d 676, 685 [185 P.2d 1].)

In the instant case deliberation and premeditation were inferable from the facts and circumstances the trial court had before it. The evidence shows that at the termination of the fight in Diana's house, defendant came out with a knife in his pocket that he had picked up in the kitchen on his way out. The inference is therefore clear that between the first and second fights defendant thought about using the knife in a later encounter with decedent. This inference is strengthened by defendant's stating to decedent, when he was in the front yard, something about fighting again. Approximately two minutes elapsed between the termination of the first fight in the living room and the beginning of the second fight in the front yard. It was during this period that defendant went from the living room into the

kitchen and got the knife and then went outside with it in his pocket. The fact that defendant went to the kitchen and got the knife before going outside justifies an inference that he considered, thought about and resolved to use the knife on decedent. Approximately three to five minutes elapsed between the end of the second fight and the time defendant starting running down the steps to the street after decedent, waving the knife in the air. He thus had time and opportunity to further ponder his acts before fatally assaulting his unarmed victim. Since deliberation and premeditation may be as instantaneous as successive thoughts, it is apparent there is ample evidence to show that the killing was done with deliberation and premeditation. On the above facts it is equally clear that defendant wilfully killed decedent. Decedent obviously did not want to fight any more because he was leaving the scene. After considering his course of action for a period of minutes, defendant took advantage of the situation and ran after the unarmed decedent for the purpose of stabbing him. The evidence and the inference that the trial court could reasonably draw therefrom amply support the determination that the killing constituted first degree murder.

 Defendant argues that this court should exercise its statutory authority under sections 1181 and 1260 of the Penal Code to modify the judgment by reducing the offense to manslaughter. On this point we agree with the court in *People* v. *Cartwright*, 147 Cal.App.2d 263 [305 P.2d 93], that "this authority should only be exercised where the evidence fails to support a judgment of murder of the first degree." (P. 268.) Since we have come to the considered conclusion that the evidence abundantly supports the finding of first degree murder we are not at liberty to consider a reduction of the offense.

It is also argued on behalf of defendant that his drinking, plus the use of a narcotic with the resultant effect upon his reasoning powers and his state of mind, "affords the sole explanation for his atrocious conduct." This, of course, was a factual question for the determination of the trial court which has been resolved on substantial evidence against the defendant. Such factual determination is binding on appeal. The basic difficulty with defendant's argument in this respect is that he would have this court reevaluate the credibility of the witnesses, reweight the testimony and draw inferences contrary to those drawn by the trial judge. We

are not at liberty to do so under the well-established principles of appellate procedure. (*People* v. *Gould*, 111 Cal.App.2d 1, 8 [243 P.2d 809].)

There is no merit in defendant's contention that he was not properly advised by the trial court as to the effect of waiving a jury trial. When the case was called for trial, defendant's counsel, Mr. Arthur, stated to the court: "In this matter it is the advice of counsel and the wish of the defendant, Alfred Torres, that trial by jury be waived and that the matter be heard by this court."

"The Court: You [referring to Mr. Marin, the Deputy District Attorney] may take the jury waiver.

"Mr. Marin: Mr. Alfred Torres, you understand that you have a right to a jury trial?

"Mr. Torres: Yes.

"Mr. Marin: And notwithstanding that right, it is your desire to waive your right to a jury trial and have the matter heard by the Court sitting without a jury; is that right?

"Mr. Torres: Yes.

"Mr. Marin: The People join in the waiver.

"Mr. Arthur: We so join."

In *People* v. *Jackson*, 167 Cal.App.2d 270 [334 P.2d 114], the sufficiency of such a waiver of jury trial was challenged. In holding that the waiver was sufficient, this court stated (p. 274): "The waiver at bar was clear and unambiguous, made by both defendant and attorney, and there is no indication that there was any lack of understanding on appellant's part. The law requires no more than this. (*People* v. *Bastio*, 55 Cal.App.2d 615, 618 [131 P.2d 614]; *People* v. *Beckworth*, 151 Cal.App.2d 842, 843 [312 P.2d 270]; *People* v. *Huerta*, 148 Cal.App.2d 272, 274 [306 P.2d 505].)" Likewise there is no indication in the instant case of any lack of understanding on the part of defendant.

Examination of the record discloses that there is no merit in defendant's claim that his counsel failed to defend him properly. Trial counsel was of defendant's own choice. He cross-examined the People's witnesses with care; he had the defendant tell his story in detail, emphasizing the effect that his drinking and use of barbiturates had on his mind. The transcript covers some 115 pages, which is in addition to approximately 90 pages covering the testimony taken at the preliminary hearing. The controlling rule in a matter of this kind is stated by the Supreme Court in *People* v. *Robillard*, 55 Cal.2d 88 [10 Cal.Rptr. 167, 358 P.2d 295], at page 97:

"The handling of the defense by counsel of the accused's own choice will not be declared inadequate except in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a farce or a sham. (*People* v. *Wein*, 50 Cal.2d 383, 410 [326 P.2d 457].)" It is unnecessary to discuss the particulars wherein it is claimed trial counsel did not properly handle defendant's defense for it is quite apparent from the record that there is no basis upon which it can be brought within the above rule. This appraisal of the matter finds support in the comment of the trial judge at the conclusion of the trial for he remarked to counsel, "You have well represented your client, Mr. Arthur, . . ."

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.