Filed 8/27/13  P. v. Brown CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAMUNDIE O. BROWN,<br><br>    Defendant and Appellant. | 2d Crim. No. B240983<br>(Super. Ct. No. BA387264)<br>(Los Angeles County) |

        Ramundie O. Brown appeals from the judgment following his conviction by jury of attempted murder and assault with a deadly weapon. (Pen. Code, §§ 664/187, subd. (a); 245, subd. (a)(1).)[1]  The jury also found true allegations of personal weapon use and great bodily injury.  (§§ 12022, subd. (b)(1); 12022.7, subd. (a).)  The trial court found that appellant had one prior serious felony conviction and served a prior prison term (§§ 667, subds. (a)(1) & (b)-(i); 1170.12, subds. (a)-(d); 667.5, subd. (b)), and sentenced him to state prison for 19 years.  Appellant contends there is insufficient evidence to support his convictions, and the prosecutor committed prejudicial misconduct.  We affirm with instructions directing the superior court clerk to correct the abstract of judgment to reflect that appellant was convicted by jury.

---

        [1] All statutory references are to the Penal Code unless otherwise stated.  The abstract of judgment incorrectly states that appellant was convicted by plea.

FACTUAL AND PROCEDURAL BACKGROUND

Richard Thompson, the victim, lived with his mother in a house behind a mixed martial arts (MMA) gym on Melrose Avenue in Los Angeles. Appellant trained at the same gym, and often worked with trainer Steve Arce (Steve). Thompson, an experienced MMA trainer, testified he was too old to "do the fighting," but practiced fighting "every day." He drank beer and vodka daily, and was an alcoholic. MMA trainer Haruntun Khachatryn (Haruntun) testified that Thompson could perform difficult training exercises extremely well while intoxicated. Appellant, an accomplished MMA fighter, specialized in boxing, and competed in matches daily.

At various times, Thompson, Haruntun, or other trainers took care of the MMA gym while its owner was unavailable. On July 31, 2011, Thompson told Steve the gym was not a motel, and that he could not sleep there. The same day, by his own estimate, Thompson drank about seven cans of beer, three bottles of vodka and several 40-ounce bottles of beer.

On the evening of July 31, while he was drunk, Thompson noticed the gym windows were broken. He entered the gym to check, and found Steve, a naked woman, and another man, later identified as appellant. Thompson told them to leave. One of them said, "[Y]ou're just an alcoholic." The last things Thompson recalled were "[h]itting . . . [appellant], finishing [his] drink, blacking out, . . . [and] waking up in the hospital." Thompson had punched appellant in the face with a closed fist when appellant was sitting on a bench near the gym, on Melrose. Appellant's face was bleeding near his eye.

Haruntun drove by, and saw appellant and Thompson on Melrose, outside the gym, facing each other and arguing loudly. Addressing Haruntun, Thompson said, "I need you right now." Haruntun parked his car behind the gym, and entered through its back door. As he walked through the gym toward Melrose, he saw Steve inside, "cleaning up his sleeping bag." Haruntun continued outside, where appellant was "in a fighting stance," with his fists in front of him, facing Thompson.

Standing with his arms outstretched, and his palms facing up, Thompson said, "If you're going to hit me, hit me. Go ahead. Hit me." Haruntun was behind appellant. Thompson told appellant to turn around. He turned toward Haruntun, then turned back toward Thompson, and resumed his fighting stance.

Appellant said, "I'm going to go get something," and left. He "went down the stairs, through the sidewalk . . . to [a] driveway that le[d] to the back parking lot." Appellant returned quickly, and lunged toward Thompson, who was "[j]ust standing there" with his arms at his sides. From Haruntun's perspective, it looked as if appellant had punched Thompson's left abdomen. Thompson asked, "Is that all you've got? That's your punch?" Appellant responded, "I didn't punch you." Thompson raised his shirt, and saw a stab wound. Haruntun then noticed a 3-inch blade protruding from the sleeve of appellant's "sweat jacket." Appellant walked westbound on Melrose. Haruntun did not see him again that night.

Haruntun called 911. Los Angeles Police Detective Greg Staats responded to the 911 call at about 9:20 p.m. He noticed a 2-inch long stab wound in Thompson's left lower chest /upper stomach area, with "internal parts coming out."

At approximately 10:00 p.m., seeking help, appellant approached Detective Staats in a parking lot, about 2.1 miles from the MMA gym. Staats described appellant as someone with "a lot of upper body strength" who "definitely worked out a lot."

Thompson required surgery, and stayed in the hospital for a week. His attending surgeon testified that a stab wound on the left side of his midsection injured Thomas's stomach, and pierced the artery that supplies blood to the stomach and mesocolon.

## DISCUSSION

### *Substantial Evidence*

Appellant contends the evidence is insufficient to sustain his attempted murder and assault with a deadly weapon convictions. We conclude otherwise.

3

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Appellant first argues that sufficient evidence is lacking because Thompson "was the aggressor," and appellant "acted in self-defense." We disagree.

Killing in self-defense is justified only if the defendant actually and reasonably believed that it was necessary to prevent imminent harm. (§ 198; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.) Whether the defendant's belief was reasonable is measured objectively, "'from the point of view of a reasonable person in the position of defendant . . . .' [Citation.]" (*Humphrey*, at p. 1083.) "'"Self-defense may be resorted to in order to repel force, but not to inflict vengeance. . . ." [Citation.]'" (*People v. Jones* (1963) 215 Cal.App.2d 341, 345.)

The jury was properly instructed on self-defense. (CALCRIM Nos. 505, 3470, 3471, 3472, 3474.) It rejected that theory and convicted appellant. Substantial evidence supports the convictions. Thompson punched appellant only one time, while he was seated on a bench. Appellant stood, assumed a fighting stance, and faced Thompson. Thompson urged appellant to hit him. Appellant said he was going "to go

4

get something," and left. He returned with a concealed knife, and became the aggressor. He lunged at Thompson, who "[j]ust standing there" with his arms at his sides, and stabbed his abdomen. From that evidence, the jury could reasonably infer that appellant stabbed Thompson out of revenge, and not in self-defense.

We also reject appellant's claim that there is insufficient evidence of his intent to kill Thompson. The "intent to kill . . . , the mental state required to convict a defendant of attempted murder, may . . . be inferred from the defendant's acts and the circumstances of the crime. . . . "'Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions."'" (*People v. Smith* (2005) 37 Cal.4th 733, 741.) Appellant stabbed Thompson's abdomen with sufficient force to inflict internal stomach injuries, and puncture the artery that feeds the stomach and mesocolon. Substantial evidence supports the finding that appellant intended to kill Thompson. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1114; *People v. Bolden* (2002) 29 Cal.4th 515, 561 ["In plunging the knife so deeply into such a vital area of the body of an apparently unsuspecting . . . victim, defendant could have had no other intent than to kill"].)

In challenging the sufficiency of the evidence, appellant also argues Thompson's testimony was unreliable because his intoxication on July 31, 2011, interfered with his perception of the incident. We disagree. Other evidence supports the judgment, including extensive eyewitness testimony about the stabbing, and medical evidence concerning the stab wound and the extent of Thompson's injuries.

Appellant further claims that Thompson's intoxication while testifying rendered him incapable of offering competent evidence. He would, therefore, have this court disregard his testimony in determining the sufficiency of the evidence. The trial court summarily and correctly ruled on the same point. Thompson testified about the amount of alcohol he consumed before testifying, the court observed his condition, and impliedly found him a competent witness. (Evid. Code, § 702.) From that point

5

forward, it was for the jury to place such weight upon his testimony as it saw fit. (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1071-1072.)

### Attempted Involuntary Manslaughter

Appellant also asks this court to reduce his conviction to attempted manslaughter "because the record supports at least a finding appellant had an actual but *unreasonable* belief in the need to defend himself against great bodily injury or death." We decline to do so.

In claiming he had "an actual if arguably unreasonable belief in the need to defend himself . . . in this attack initiated by Thompson," appellant cites *People v. Booker* (2011) 51 Cal.4th 141, 182. *Booker* simply addressed the need for imperfect self-defense instructions. (*Ibid.*) Appellant's jury was properly instructed on imperfect self-defense, as well as self-defense, and it rejected both theories. (CALCRIM Nos. 460, 570, 604.) Although section 1260 empowers this court to "reduce the degree of the offense or attempted offense" we will not exercise that power here, where substantial evidence supports the judgment. (*People v. Torres* (1963) 214 Cal.App.2d 734, 740.)

### Prosecutorial Misconduct

Appellant argues that prosecutorial misconduct compels the reversal of his convictions. We conclude otherwise.

A prosecutor's misconduct violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. (*People v. Hill* (1998) 17 Cal.4th 800, 819.) Conduct of a prosecutor that does not make the trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade the court or jury. (*Ibid.*)

Appellant first claims that the prosecutor engaged in misconduct because "the prosecutor . . . delayed turning over evidence to the defense." Among other things, this claim concerns information that prosecution witness Haruntun provided in

answering a question. (He testified that there had been one incident where appellant was hostile and "there was . . . flailing of a sword . . . .") Defense counsel immediately asked to approach the bench and objected that the prosecutor had not disclosed that information. After the prosecutor explained she had no prior knowledge of the flailing sword incident, the trial court properly concluded there was no "discovery violation because the People just found out about it, too," and ordered the prosecutor to interview Harunton to avoid any further surprises. (§ 1054.7.) The next day, defense counsel complained that the prosecution had given him two new statements from Haruntun, one new statement from the victim, as well as statements from officers. The court considered his claims. The record supports its conclusion that the prosecutor was meeting her discovery obligation to provide newly discovered information to defense counsel upon its discovery. (§ 1054.7.)

Appellant also contends that the prosecution's improper referral to his shirt as a "wife-beater" constituted prejudicial misconduct. The reference occurred during the prosecution's direct examination of a detective. The relevant exchange follows:

"Q[.] . . . [I]s that how [appellant] appeared [referring to two exhibits] on the night that you detained him?

"A[.] Yes, it does.

"Q[.] And it looks like he's wearing some type of black tank top?

"A[.] Yes, that's correct.

"Q[.] What we commonly refer to as a wife-beater –

"THE COURT: I'm going to sustain my own objection. He's wearing a black tank top. "

We agree the "wife-beater" reference was improper. However, the trial court immediately sustained its own objection, and the prosecutor made no further reference to a "wife-beater" shirt. This isolated, brief, improper reference was

harmless under any standard of review.  (Compare *People v. Hill, supra*, 17 Cal.4th 800 [involving multiple, egregious acts of prosecutorial misconduct].)

DISPOSITION

The judgment is affirmed.  The superior court clerk is directed to correct the abstract of judgment to show that appellant was convicted by jury.

<u>NOT TO BE PUBLISHED</u>

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

Henry J. Hall, Judge

Superior Court County of Los Angeles

_____


Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.