Tracy Lee DEW, Appellant,

v.

UNITED STATES, Appellee.

Raymond ROSS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–1580, 84–1584.

District of Columbia Court of Appeals.

Argued July 5, 1988.
Decided May 3, 1989.

the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge,[*] FERREN, Associate Judge, and Pryor,[**] Senior Judge.

FERREN, Associate Judge:

A jury convicted appellants, Tracy Lee Dew and Raymond Ross, of one count of armed robbery, D.C.Code §§ 22–2901, –3202 (1981 & 1988 Supp.). They appeal their convictions on separate grounds. Ross contends the trial court violated his sixth amendment right to counsel by admitting into evidence a statement he made during postindictment questioning in the absence of an attorney who had previously been appointed to represent him. Dew primarily contends that under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), his conviction must be reversed because the trial court's admission of an extrajudicial statement of his codefendant, Ross, who did not testify, materially prejudiced his case. We agree that if Ross was represented by appointed counsel at the time of the questioning, a fact unresolved in the record, his Sixth Amendment rights were violated. We decline to remand, however, because we conclude that any error in the admission of Ross's statement was beyond a reasonable doubt. We reject Dew's argument. Accordingly, we affirm.

### I.

At approximately 10:00 p.m. on November 29, 1983, Peter Webber, an investigator for criminal defense attorneys, drove to the 5600 block of Central Avenue, S.E., in order to investigate a recent robbery and homicide. After completing his work, Webber entered his car and prepared to leave. He noticed two men approaching the passenger side of his car. They bent down and peered into the car, saying something

Charles E. Chisholm, appointed by the court, for appellant Dew.

Calvin Steinmetz, Washington, D.C., appointed by the court, for appellant Ross.

Sharon M. Collins, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at

[*] Judge ROGERS was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

[**] Judge PRYOR was Chief Judge of this court at the time of argument. His status changed to Senior Judge on November 2, 1988.

that Webber could not understand. Webber then decided to get out of the car. That decision proved unwise, for the men then grabbed him, struck him on the back of the head, and, holding a knife to his neck, dragged him several yards to a walkway off the street where they pushed him to the ground. As Webber fell, he noticed one of the men holding a shotgun. Webber then complied with a command to empty his pockets. As he lay on the ground, one of the men, later identified as appellant Dew, stood over him with a shotgun, and the second man kicked him in the head. At some point, one of the men yelled "get that light," and Webber sensed that one of his assailants had left. When that person returned, Dew ordered Webber to get up. As Webber rose to his knees, Ronald and James Thomas appeared in the walkway. Ronald saw Dew standing over Webber with a knife, and James witnessed a man, later identified as appellant Ross, "standing a few feet away acting like a watch-out boy." Although the Thomas brothers approached within three to four yards of appellants and Webber, they left after Dew suggested they move on.

One of the men then grabbed Webber from behind and began shoving him towards a couch located where the walkway intersected an alleyway. Webber, however, managed to flee and, with Dew giving chase, ran to a nearby carryout where the police and an ambulance were called. Meanwhile, after witnessing the events, the Thomas brothers had stopped by the home of two sisters, Joanne Begal and Terri Little. Ronald told the sisters what had happened. When the sisters heard the ambulance arrive, they entered the walkway and saw Dew standing near the couch and a second man standing behind a trash can. The sisters then proceeded to the carryout where they saw Webber sitting in an ambulance speaking with the police.

Eventually, Sergeant Charles Bailey arrived on the scene and took a report from Webber. After learning from Webber that someone in a house adjacent to the walkway might have witnessed the robbery because a light was on in the house for a time during the incident, Bailey and another officer went to the home and learned from Demetrius Lawry that one of Webber's assailants was Dew. The police then discovered that Dew lived around the corner and called for backup. At approximately 11:40 p.m., as the officers waited, Dew and Ross strode by. The officers asked the two to identify themselves, and, when Dew did so, he was arrested. Ross, after resisting a pat-down search, was arrested for disorderly conduct.

Ross was taken to the robbery branch of the police department where he gave a statement denying any involvement in the armed robbery. After paying a $10 fine for disorderly conduct, he was released. In December 1983, however, Ross was subpoenaed to appear before the grand jury. At the grand jury proceedings, Ross was informed by Detective Stowe that he was entitled to an attorney, and one was provided for him. In addition, Ross appeared in a lineup on December 24, 1983, and was again assisted by an attorney. At the lineup, Webber was unable to identify either appellant, but Little, Lawry, and Begal identified Dew. A month later, the Thomas brothers were shown a photo array and identified Dew. The brothers also selected the photograph of Ross.

On February 15, 1984, the government filed an indictment charging both appellants with the November 29, 1983, robbery of Webber.[1] On February 21, 1984, the court appointed still another attorney to represent Ross. On March 7, 1984, after Ross failed to appear for arraignment, a bench warrant was issued for his arrest. On April 3, 1984, Ross was arrested pursuant to the grand jury indictment for armed robbery. After Detective Stowe advised him of his *Miranda*[2] rights, Ross gave a statement in which he admitted being present at the scene of the crime.

---

1. The indictment also charged both appellants with one count each of unauthorized use of a vehicle. D.C.Code § 22–2204 (1981). The jury acquitted both appellants of this charge.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## II.

### A.

Ross argues that his sixth amendment right to counsel was violated by the admission into evidence of statements Ross made during postindictment questioning on April 3, 1984, when an attorney who had been appointed on February 21, 1984, to represent him was not present. At the time Ross made the statements, he had been advised of his *Miranda* rights and had waived them.

Three years ago, the Supreme Court imposed a sixth amendment limitation on police questioning when an accused, who does not have a lawyer, has invoked the right to counsel. The Court ruled that, "[j]ust as written waivers are insufficient to justify police-initiated interrogations after request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis." *Michigan v. Jackson*, 475 U.S. 625, 635, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986). Respondent Jackson had explicitly requested appointment of counsel, thereby expressing a desire to rely on counsel's advice before deciding to speak with the police. *Jackson*'s ban on police-initiated interrogation, therefore, was based not on the mere existence of the right to counsel but on the accused's actual invocation of that right.

Two years later, the Supreme Court developed this distinction in *Patterson v. Illinois*, — U.S. —, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), another case in which the accused did not have a lawyer but, in contrast with *Jackson*, did not request one. The Court held that the accused's sixth amendment right to counsel, as such, did not bar the police from initiating a meeting with the accused, obtaining a waiver of that right, and questioning him. The Court rejected Patterson's claim that, because his sixth amendment right to counsel arose with his indictment, he in effect had made a request to deal with the police only through counsel, precluding the police from initiating interrogation after indictment except through defense counsel. *Id.* 108 S.Ct. at 2394. The Court distinguished *Jackson*, noting that Patterson had "at no time sought to exercise his right to have counsel present." *Id.* The Court further held that "an accused who is admonished with the warnings prescribed by this Court in *Miranda*, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 108 S.Ct. at 2396–97 (citation omitted).

The Court in *Patterson* was careful to note "as a matter of some significance" that the accused "had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities," and that "[o]nce an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." 108 S.Ct. at 2393 n. 3 (citing *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985)).

In *Moulton*, unlike *Patterson* and *Jackson*, the accused did have a lawyer. He appeared with counsel to enter pleas of not guilty, and was subsequently represented by counsel in "numerous proceedings ... during the ensuing year and a half." *Moulton*, 474 U.S. at 162, 106 S.Ct. at 480. While Moulton was represented by counsel, but without notifying counsel, the police wired a cooperative co-defendant with a listening device. They overheard Moulton make inculpatory statements when he met privately with the co-defendant. The Supreme Court held that the state had violated Moulton's sixth amendment right to counsel:

> Once the right to counsel has attached and been asserted, the State must of course honor it. This means more than simply that the State cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek this assistance.

\*  \*  \*  \*  \*  \*

The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accusee by invoking this right.... [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.

*Moulton,* 474 U.S. at 170–71, 176, 106 S.Ct. at 484–85, 487 (footnotes omitted). *See also United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (incriminating statements of accused deliberately elicited by government agents through inmate confined in same cellblock, in absence of defense attorney, violated sixth amendment right to counsel); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (incriminating statements deliberately elicited by federal agents through concealed radio transmitter from accused on bail, in absence of his attorney, violated sixth amendment right to counsel).

■■ The question, then, is whether *Moulton,* as endorsed in *Patterson,* 108 S.Ct. at 2393 n. 3, stands for the proposition that once counsel has been "accepted by appointment" in a criminal case, *id.,* the sixth amendment bars police-initiated interrogation of the accused except through arrangement with defense counsel. More specifically, does appointment of counsel as such equal the "request for counsel" required of an unrepresented suspect, *Jackson,* 475 U.S. at 635, 106 S.Ct. at 1410, before the sixth amendment acts to bar police-initiated interrogation? We believe the answer appears to be yes. Given the Supreme Court's express limitation of its holding in *Patterson* to unrepresented defendants, 108 S.Ct. at 2393 n. 3, coupled with the Court's consistent precedent barring deliberate police efforts to elicit incriminatory statements in the absence of counsel when the suspect is represented, *see Moulton, supra; Henry, supra; Massiah, supra,* we see little, if any, room for an argument that the Supreme Court would permit a police-initiated request for a post-indictment waiver of counsel by a represented defendant, except through defense counsel.[3]

In the present case, because of peculiar facts, it is not clear whether Ross was represented by appointed counsel at the time he made his inculpatory statement to the police.[4] The trial court made no definitive finding about the nature of Ross's relationship with counsel, if any, before or during Ross's postindictment interrogation. The court merely said that it was "questionable" whether a relationship between

**3.** In *Shreeves v. United States,* 395 A.2d 774 (D.C.1978), we sustained a police-initiated interrogation based on a waiver of sixth amendment rights after counsel had been appointed. A month earlier, counsel had told the interrogating officer, a Maryland Deputy Shefiff, that "he would advise appellant not to talk." *Id.* at 778. Subsequently, the Deputy Sheriff "contacted appellant's counsel about interviewing appellant, but no interview occurred." *Id.* Finally, a month after the first contact with counsel, the Deputy Sheriff obtained the waiver of rights from appellant and interviewed him at the D.C. Jail "without notifying his counsel about the intended interview." *Id.* (footnote omitted). "Appellant then made admissions ... about the crimes." *Id.* This court sustained the trial

court's denial of a motion to suppress statements based on an alleged violation of the sixth amendment right to counsel. We believe that, on these facts, the Supreme Court decisions in *Maine v. Moulton,* 474 U.S. 159, 170–71, 176, 106 S.Ct. 477, 484–85, 487, 88 L.Ed.2d 481 (1985), as elaborated in *Patterson v. Illinois,* —— U.S. ——, 108 S.Ct. 2389, 2393 n. 3, 101 L.Ed.2d 261 (1988), effectively overrule Part II of *Shreeves,* 395 A.2d at 780–82.

**4.** The record is clear that Ross did not affirmatively request counsel within the meaning of *Michigan v. Jackson,* 475 U.S. 625, 635, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986).

Ross and appointed counsel "existed or had been formalized" at the time Ross gave his April 3 statement to Detective Stowe.

The record shows that Ross was indicted by grand jury original for armed robbery and unauthorized use of a vehicle on February 15, 1984. Six days later, on February 21, the trial judge appointed attorney Kathryn Paull Brown to represent him. Thereafter, according to a trial court finding, "Ms. Brown sent some letters [to Ross].... We don't know whether actually they had been received. We know they had not been returned. There had been no conversation between Mr. Ross and her at that point." Ross failed to appear at his arraignment on March 7, and, on March 10, a bench warrant was issued for his arrest. Ross was arrested on April 3, after which he gave his statement.

Ross was arraigned on April 5. The court appointed Mary Lou Soller of the Public Defender Service (PDS) to represent him; Soller entered her appearance on April 5. On April 16, Soller filed a motion for leave to withdraw because of a conflict of interest, having learned that the complaining witness was a PDS employee. In her motion, Soller represented:

Ms. Kath[ryn] Paul[l] Brown had originally been appointed by the Court to represent Mr. Ross. She had never met Mr. Ross because this case was a grand jury original, however. Thus, her appointment was terminated at the arraignment. She has indicated that she would be willing to accept a re-appointment in this case, if the Court deems it appropriate.

On April 24, 1984, the court granted Soller's motion and appointed Brown to represent Ross.

The trial court did not resolve whether, as Soller had suggested, Brown's February 21 appointment to represent Ross had "terminated at the arraignment" on March 7 when Ross had failed to appear. By referring to Brown's letters to Ross and merely calling it "questionable" whether Brown's relationship with Ross "existed or had been formalized," the court appeared to allow for the possibility that Brown had remained as Ross's counsel absent a court order relieving her of that responsibility until Soller was appointed on April 5. Indeed, the court in effect assumed Ross was represented by counsel, for the court expressed a concern that the police may have deliberately elicited Ross's statements in violation of his sixth amendment rights, citing *Massiah, supra*. But, in analyzing the *Massiah* issue the trial court focused not on the existence of a lawyer-client relationship but exclusively on Detective Stowe's knowledge of such a relationship. The court inquired as to whether Stowe, who had obtained counsel (not attorney Brown) for Ross at the grand jury sometime in December 1983, was testifying truthfully in saying he did not believe Ross was represented by counsel on April 3, 1984, when Stowe read Ross his *Miranda* rights, obtained his waiver of the right to counsel, and received the statement at issue. The trial court found that Stowe

did not know and would not have known and should not have necessarily ... known that in this original indictment situation, Mr. Ross had an attorney. I don't believe there was ... any intentional infringement by Sgt. Stowe in that relation because he didn't know about it.

For this reason, the court denied Ross's motion to suppress the statement.

■ Detective Stowe's knowledge, however, cannot be determinative here. For fifth amendment purposes, the fact that an interrogating police officer did not know a suspect had requested counsel when he was arrested is of "no significance." *Arizona v. Roberson*, — U.S. —, 108 S.Ct. 2093, 2101, 100 L.Ed.2d 704 (1988). The suspect's right to counsel will still be protected under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because "an officer who proposes to initiate an interrogation" is obliged "to determine whether the suspect has previously requested counsel." *Roberson*, 108 S.Ct. at 2101. No reason readily appears as to why the same rule should not apply in the sixth amendment context; *Michigan v. Jackson, supra*, makes clear that the Supreme Court virtu-

ally equates fifth and sixth amendment analyses for protecting the right to counsel for police-initiated questioning. If Ross had requested or received appointed counsel, therefore, Detective Stowe must be deemed to have known about it.

Accordingly, the critical question remains unresolved on this record: was Ross represented by attorney Brown within the meaning of *Patterson, Moulton, Henry,* and *Massiah* at the time he gave his April 3 statement to the police? If so, the statement should have been suppressed. Or, did Brown's appointment somehow expire, at least for purposes of the sixth amendment issue in this case, once Ross failed to appear for arraignment on March 7, leaving him unrepresented until his April 5 arraignment two days after he gave his inculpatory statement? In this latter case, absent a request for counsel, *see supra* note 4, Ross could be found to have waived his right to counsel for purposes of giving the statement. *See Patterson,* 108 S.Ct. at 2394, 2396–97.

▉ Ordinarily, we would remand the record for a hearing on this issue. *See McClinnahan v. United States,* 454 A.2d 1340, 1354 (D.C.1982) (Ferren, J., dissenting). On this record, however, any error in admitting Ross's statement was harmless beyond a reasonable doubt. *See Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705 (1967). The Thomas brothers both identified Ross and Dew in photo arrays and James Thomas, who knew Ross from the neighborhood, recognized Ross and identified him as the lookout. Their testimony about the events surrounding the crime was fully corroborated by the testimony of the government's other witnesses even though Webber was unable to identify his attackers. The April 3 statement admitting Ross's presence at the scene was simply cumulative evidence, *cf. Derrington v. United States,* 488 A.2d 1314 (D.C.1985) (statement elicited in violation of fifth amendment right to counsel), and Ross was not constitutionally prejudiced by its admission.

### B.

▉ Ross further argues that the trial court erred in declining to grant his motion for judgment of acquittal on the robbery count because the government's evidence established only his presence at the scene of the crime and failed to demonstrate his involvement. "Cases involving the sufficiency of the government's evidence are to be viewed in the light most favorable to the government, 'giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact....'" *McEachin v. United States,* 432 A.2d 1212, 1218 (D.C.1981) (citation omitted). On appeal, we "do not distinguish between direct and circumstantial evidence," and reversal is required "only where the government has produced no evidence from which a reasonable mind might infer guilt beyond a reasonable doubt." *Watson v. United States,* 501 A.2d 791, 792 (D.C.1985) (citations omitted).

▉ At trial, the government sought to obtain Ross's conviction for armed robbery on an aider and abettor theory. In order for the government to prove that an accused aided and abetted another in the commission of a substantive offense, it must establish that: "(a) a crime was committed by someone; (b) the accused assisted or participated in its commission[;] and (c) his [or her] participation was with guilty knowledge." *Jefferson v. United States,* 463 A.2d 681, 683 (D.C.1983) (citation omitted).

▉ The government's evidence showed that Ross remained in the company of Dew immediately following the incident. Thus, despite trial testimony suggesting the presence of other individuals in the walkway, based on Ross's proximity to the scene of the crime, his role as a lookout, and his continued association with Dew following the incident, the jury could find beyond a reasonable doubt that Ross assisted Dew in the commission of the robbery and that he did so with guilty knowledge. *See Patterson v. United States,* 479 A.2d 335, 338 (D.C.1984) (citing *Creek v. United States,* 324 A.2d 688 (D.C.1974)). Accordingly, we

conclude that the evidence presented by the government was sufficient to sustain Ross's conviction for armed robbery under an aider and abettor theory.

### III.

Dew argues that under *Bruton v. United States, supra,* the trial court erred in denying his motion to sever his case from that of his nontestifying codefendant, Ross, because admission of Ross' extrajudicial statement materially prejudiced his defense. Dew raises a number of contentions in this regard, none of which requires reversal.

Dew first argues that, although Ross's statement was redacted and the neutral term "the other person" substituted in the place of his name, and despite the trial court's limiting instruction to the jury, he suffered material prejudice because that statement, when viewed in light of the total trial evidence, clearly inculpated him.

■ The original statement contained a long narrative in which Ross implicated Dew as the main perpetrator of the Webber robbery. In order to avoid *Bruton* problems, the government deleted most references to Dew's involvement in the crime, except that the neutral term "the other person" was substituted for Dew's name in a sentence that could not have been excised without distorting the substance of Ross's explanation. The statement as redacted contained no details of the incident, nor did it in any way corroborate the testimony of the government's witnesses. Moreover, the trial court instructed the jury to consider the statement as evidence only against Ross. Under these circumstances, we conclude that any error was harmless beyond

a reasonable doubt. *See Foster v. United States,* 548 A.2d 1370, 1380 (D.C.1988).

■ Dew also argues, however, that because the independent evidence of his possession of a gun during the commission of the robbery was conflicting, admission of Ross's redacted statement added substantial weight to the prosecution's case because it eliminated an assertion by Ross that Dew did not have a gun. The government obviously excised this reference in order to reduce the risk that the jury would infer from Ross's statement that Dew was present at the scene of the crime. Indeed, in light of Dew's attempt at trial to raise an alibi defense, retention of the challenged reference in its express form would have increased, not decreased, any potential prejudice Dew was likely to suffer from admission of Ross's statement. It follows that excision of Ross's assertion that Dew did not have a gun did not materially prejudice Dew's defense.[5]

Finally, we reject Dew's contention that a severance was required because admission of Ross's redacted statement gave rise to a defense on the part of Ross that was inherently irreconcilable with Dew's alibi defense. Ross presented no evidence, and his extrajudicial statement was offered by the government in its case-in-chief in order to establish Ross's guilt. Even assuming that Ross presented a defense of innocent presence, and that it conflicted with Dew's alibi defense despite the redaction, there was available at trial enough independent evidence of Dew's guilt so that it could be said "with substantial certainty, that the conflict in defense alone [did] not sway the jury to find appellant[ ] guilty." *Tillman*

5. In a related argument, Dew contends that incorporation of Ross's signature from the original statement into the redacted version and the retyping of the original statement somehow resulted in prejudice to his case. When feasible, we have approved redaction of a nontestifying codefendant's statement to eliminate references which incriminate a non-confessing defendant as an alternative to severance on *Bruton* grounds. *See, e.g., West v. United States,* 499 A.2d 860, 868 (D.C.1985). In the present case, despite incorporation of Ross's signature, it was

undisputed that Ross signed the original statement thereby indicating its accuracy, and that the text of the original statement was not altered in any fashion except that references to Dew's participation in the crime were substantially deleted and a sole isolated reference to "the other person" substituted for Dew's name. Furthermore, the original statement was retyped in an attempt to deemphasize the deletions. Under such circumstances, we fail to see how the method of redaction in this case prejudiced Dew.

*v. United States,* 519 A.2d 166, 171 (D.C. 1986) (citation omitted).[6]

*Affirmed.*

PRYOR, Senior Judge, concurring:

This case presents the question whether the return of an indictment, and the assignment of counsel, creates a circumstance, notwithstanding warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which precludes police conversation with an accused, unless the person initiates the contact and singularly waives the right to counsel.

In a series of decisions touching this area, the Supreme Court has yet to resolve this precise issue. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court, in the context of Fifth Amendment protections, held that an accused, having asserted his right to remain silent, is not subject to further interrogation unless he initiates some further communication. In a case where the accused was indicted, released on bail, and represented by counsel, the Court, in *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), focused on the Sixth Amendment right to counsel, and concluded that, unless expressly waived, the accused in such circumstances has a right to have his attorney present at any confrontation with the police or their agent. Drawing closer to the case at bar, the Court, in an instance where the defendant requested an attorney at arraignment, *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), ruled that police may not initiate questioning of a person where the assistance of counsel has previously been asserted and not waived. Lastly, the Court most recently approved the post-indictment interview of an individual where the accused, in the face of *Miranda* warnings, did not request counsel, retain a lawyer, nor rely upon an appointment of counsel by the court. *Patterson v. Illinois,* — U.S. ——, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).

Thus far the decisions emanating from the Court make it clear that an accused is entitled to the assistance of counsel at post-indictment interviews with law enforcement authorities where the right is asserted.

This case reflects a situation where an indictment was returned and an attorney assigned. It is unclear, prior to questioning, whether appellant ever met or accepted the attorney. It is clear that, after *Miranda* warnings, he did not claim the right to counsel. Thus, in these circumstances, the majority opinion interprets the Supreme Court decisions—cases markedly different on their facts—and finds a violation of the Sixth Amendment.

I do not. I conclude that the warnings given in this instance were adequate and thus do not apply a harmless error analysis.

---

**6.** Dew's additional contention that the trial court erred in refusing to instruct the jury on his defense of alibi has no merit. *See Greenhow*

*v. United States,* 490 A.2d 1130, 1134–35 (D.C. 1985).