Arthur J. HARRIS, Appellant,

v.

UNITED STATES, Appellee.

Phillip M. HART, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10608 and 10644.

District of Columbia Court of Appeals

Argued March 10, 1977.

Decided June 20, 1977.

Rehearing and Rehearing en Banc
Denied Oct. 20, 1977.

Jeffrey Lee Greenspan, Washington, D. C., for appellant Harris.

Frederick H. Weisberg and Warren C. Nighswander, Public Defender Service, Washington, D. C., for appellant Hart.

Mary Ellen Abrecht, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before YEAGLEY, HARRIS and MACK, Associate Judges.

YEAGLEY, Associate Judge.

Appellants Harris and Hart were jointly tried and convicted by a jury of first-degree murder (D.C.Code 1973, § 22–2401). In his appeal, appellant Hart contends that the trial court erred in denying his motions for a judgment of acquittal at the close of the government's case-in-chief and at the close of all evidence. Appellant Harris challenges his conviction on two grounds: (1) the trial court improperly denied his motion for judgment of acquittal notwithstanding the verdict; and (2) the court at a pretrial suppression hearing erroneously denied his motion to suppress identification evidence. Finding no error, we affirm.

The government's evidence rested principally on the testimony of an eyewitness to the homicide. The witness stated that he was inside the Federal City Liquor Store at 943 Ninth Street, N.W., at approximately 2:30 on the afternoon of January 21, 1975, when appellants and two other men, one of whom became the murder victim, entered the store. They appeared to the witness to be "somewhat intoxicated." An argument ensued between Hart and the victim regarding a gun, and Hart pulled an ice pick out of his coat pocket and "held [it] in his hands towards the [victim's] face." Hart then told the victim "you're going to get my gun or else I'm gonna kill you." According to the eyewitness, Harris then stated, "Let's kill the . . . [victim]." When the manager of the liquor store insisted they take the argument outside, Hart, the victim, and an unidentified third man left the premises, crossed the street and turned into a nearby alley. Harris followed shortly thereafter but he did not enter the alley until after the unidentified third man exited the alley and proceeded down Ninth Street. The witness then left the liquor store and walked down the street to get a direct view of the alley. A scuffle had started between the three men (Harris, Hart and the victim). Harris grabbed the victim from the back. "The man was wrestled to the ground" by both defendants and

Harris struck him on top of the head. Hart then proceeded to stab the victim repeatedly with the ice pick.

A second government witness was outside the liquor store during the time in which the homicide was committed. He testified that as Hart crossed the street he was holding the victim behind his neck. He also recalled that as Harris walked past him he said, "He stole his [Hart's] pistol and he is going to kill him." On January 22, 1975, the day after the homicide, the witness was shown an array of 10 photographs and he positively identified appellant Hart as the man who had been holding the victim behind the neck. Although appellant Harris' photograph was not among those included in the array, the witness identified a second photograph which he believed resembled the other man who had joined Hart in the alley. Before his grand jury testimony on February 21, 1975, the witness was shown the exact same array of photographs with the exception that appellant Hart's photograph had been removed and replaced by a picture of Harris. On that occasion, the witness made a positive identification of Harris as the second man he saw on the afternoon of January 21, 1975.

## I.

Appellant Hart contends that the government's evidence left the jury with a reasonable doubt as to the element of premeditation and deliberation, and the trial court therefore erred in denying his motion for a judgment of acquittal on the charge of first-degree murder. We do not agree.

The fundamental distinction between first and second-degree murder is that:

[F]irst degree murder, with its requirement of premeditation and deliberation, covers calculated and planned killings, while homicides that are unplanned or impulsive, even though they are intentional and with malice aforethought, are murder in the second degree. [*Austin v. United States*, 127 U.S.App.D.C. 180, 188, 382 F.2d 129, 137 (1967).]

It is settled law that the evidence of premeditation and deliberation must show that the determination to kill was reached calmly and "in cold blood" rather than under impulse or the heat of passion. *Id.* at 185, 382 F.2d at 134. No particular length of time is necessary for deliberation and it is not a lapse of time itself which constitutes deliberation, "but the reflection and turning over in the mind of the accused concerning his existing design and purpose to kill." *Id.* at 187 n.14, 382 F.2d at 136 n.14.

In this connection, we recognize that premeditation and deliberation may be inferred from sufficiently probative facts and circumstances. *Lundberg v. Buchkoe,* 338 F.2d 62 (6th Cir. 1964); *People v. Cartwright,* 147 Cal.App.2d 263, 305 P.2d 93 (Ct.App.1956). For example, evidence of prior threats or hostile conversations between parties may support a conclusion that the defendant acted under the impetus of calm reflection rather than impulse. *Austin v. United States, supra; Belton v. United States,* 127 U.S.App.D.C. 201, 382 F.2d 150 (1967); *Bostic v. United States,* 68 U.S. App.D.C. 167, 94 F.2d 636, *cert. denied,* 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1937).

We find that the evidence in the present case, when viewed in a light most favorable to the government, *Richardson v. United States,* D.C.App., 366 A.2d 433 (1976), supports the trial court's finding that the jury might fairly conclude beyond a reasonable doubt that appellant Hart premeditated and deliberated the killing. *Crawford v. United States,* 126 U.S.App. D.C. 156, 158, 375 F.2d 332, 334 (1967). He openly threatened to kill the victim unless he gave him a gun; he brandished an ice pick in the victim's face, forcibly escorted him across the street and into a nearby alley and then stabbed him repeatedly with the ice pick. The period of time between the argument and threat in the liquor store and the final confrontation in the alley was clearly sufficient for appellant to calmly reflect on his determination to kill. We *therefore* conclude that the trial court did not err in denying appellant's motions for a judgment of acquittal.

## II.

Appellant Harris first contends that the trial court erred in denying his motion for a judgment of acquittal notwithstanding the verdict on the charge of first-degree murder. He challenges the court's ruling in three separate respects. First, he argues that uncontroverted evidence existed of his intoxication at the time of the homicide such that he was incapable of forming the requisite intent to kill, or of premeditating and deliberating the homicide. We do not agree.

The rule in this jurisdiction with respect to voluntary intoxication is clear:

[V]oluntary intoxication will not excuse murder, but it may negative the ability of the defendant to form the specific intent to kill, or the deliberation and premeditation necessary to constitute first degree murder, in which event there is a reduction to second degree murder. [*Bishop v. United States,* 71 U.S.App.D.C. 132, 136, 107 F.2d 297, 301 (1939) (footnote omitted).]

*See also Sabens v. United States,* 40 App. D.C. 440, 444 (1913); D.C. Criminal Jury Instruction No. 5.12 (2d ed. 1972). Here, the evidence adduced at trial presented a question of fact regarding the extent of appellant's intoxication which we conclude was properly submitted to the jury. *Crawford v. United States, supra; Mergner v. United States,* 79 U.S.App.D.C. 373, 147 F.2d 572, *cert. denied,* 325 U.S. 850, 65 S.Ct. 1085, 89 L.Ed. 1971 (1945). The eyewitness to the homicide described the four men who entered the liquor store as "somewhat" intoxicated. He also stated that at one point appellant Harris purchased a bottle of vodka and "took a drink out of it." Other than the limited testimony of this one witness, however, the record does not support appellant's contention that the evidence of his intoxication was sufficient for the trial court to set aside the jury's resolution of that issue.

We also reject appellant's contention that his motion for judgment of

acquittal should have been granted because of the lack of evidence of his premeditation and deliberation. During the argument in the liquor store Harris was heard to say, "Let's kill the . . . [victim]." He followed Hart and the victim into the alley and actively assisted in the murder. The evidence, when viewed in the light most favorable to the government, supports the inference that both defendants had the occasion and capacity to calmly reflect on the killing. *Austin v. United States, supra.*[1]

The second principal issue raised by appellant Harris concerns the in-court identifications made by the witness who observed the defendants outside the liquor store. He argues that the court at the suppression hearing erroneously concluded that the second array of photographs shown to the witness immediately before his grand jury appearance was not impermissibly suggestive. He contends that a different conclusion was warranted for two reasons: First, the February 21 array was exactly the same as the first except for the substitution of Harris' picture for Hart's. Second, appellant Harris' photograph was the only one in the array of a man with a noticeable scar on the right side of his face. It was also distinct from the others because it was one of two photographs showing a light-skinned, clean-shaven individual, and it was the only photograph showing a right profile.

 In *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Supreme Court enunciated the standard for reversal of convictions based on eyewitness identification at trial following an improper pretrial photographic identification. A conviction may be set aside if in the totality of the circumstances "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." In applying the *Simmons* formulation, this court has joined other jurisdictions which have held that the presence of a distinguishing feature does not always give rise to a likelihood of misidentification. *See, e. g., United States v. Sherry,* D.C.App., 318 A.2d 903 (1974); *Conyers v. United States,* D.C.App., 309 A.2d 309 (1973). *See also United States v. Harrison,* 460 F.2d 270 (2d Cir.), *cert. denied,* 409 U.S. 862, 93 S.Ct. 152, 34 L.Ed.2d 110 (1972); *United States v. Abbate,* 451 F.2d 990 (2d Cir. 1971).

 With respect to the arrays in the present case, we are not persuaded that the identification procedure employed by the police on February 21 was so unduly suggestive as to violate due process. Although the photographs in the two arrays were identical (other than the Harris and Hart pictures), it is highly unlikely that the witness retained a clear memory of each photograph in the first array during the one month period prior to the second showing. We also cannot accept appellant's contention that his photograph exhibited such distinguishing features as to make the witness' identification inevitable. Appellant's scar was apparently not an important identifying characteristic. The uncontroverted testimony of the witness and the officers conducting the array was that the witness did not inform the police about the scar until *after* the identification on February 21. Moreover, the witness made an uncertain identification of someone *other* than Harris in the initial array on January 22.

 Although his pretrial identification of appellant Harris was not strong, the witness' uncertainty was merely a factor

---

1. Appellant's third contention with respect to the denial of his motion for judgment of acquittal is equally without merit. He claims that he was prejudiced by various differences between the instructions which were initially read to the jurors and those given a second time during the jury's deliberations. Appellant did not object to the instructions following the trial court's final reading. As has so often been stated by this court, in the absence of an objection to the instructions as required by Super.Ct.Cr.R. 30, the error complained of must rise to the level of "plain error." That is, it must be "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States,* D.C.App., 362 A.2d 706, 709 (1976) (en banc), *citing Adams v. United States,* D.C.App., 302 A.2d 232 (1973). The minor discrepancies noted by appellant cannot be said to have reached that level of prejudice.

for the jury to consider in determining the weight to be given his in-court identifications. We therefore conclude that the court at the suppression hearing did not err in denying appellant's motion to suppress the identification evidence.[2]

Finding no error in the pretrial or trial proceedings, the judgments are

*Affirmed.*

2. We note, in any event, that Harris was positively identified as a participant by the eyewitness to the homicide who stated that he was accustomed to seeing appellant "every other day," that he was nicknamed "Georgetown," and that he had mixed gray hair and a scar on the side of his face.