Mark A. WATSON, Appellant,

v.

UNITED STATES, Appellee.

No. 83–1015.

District of Columbia Court of Appeals.
Argued Feb. 20, 1985.
Decided Dec. 5, 1985.

Allie J. Sheffield with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant.

Joan Draper, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and Harold L. Cushenberry, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, BELSON, and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellant appeals his conviction for first degree murder, D.C.Code § 22–2401 (1981), of Metropolitan Police Officer Donald Lunning on the ground that there was insufficient evidence of premeditation and deliberation. Consistent with our standard of review, we hold that a reasonable jury could reasonably find, from the evidence in the government's case-in-chief,[1] that appellant had formed the decision to kill upon reaching for the loose gun, and that he gave further thought about this decision when the officer pleaded for his life. Accordingly, we affirm.

. I

In reviewing the denial of a motion for a judgment of acquittal notwithstanding the verdict, this court must determine " 'whether there was sufficient evidence from which a reasonable juror could fairly conclude guilt beyond a reasonable doubt.' " *Jones v. United States*, 477 A.2d 231, 246 (D.C.1984) (quoting *Head v. United States*, 451 A.2d 615, 622 (D.C.1982)). We view the evidence in the "light most favorable to the government, giving full play to the right of the jury to determine credibility, weighing the evidence, and draw justifiable inferences of fact," *Hall v. United States*, 454 A.2d 314, 317 (D.C.1982), and do not distinguish between direct and circumstantial evidence. *Jackson v. United States*, 395 A.2d 99, 102 (D.C.1978); *Byrd v. United States*, 388 A.2d 1225, 1229 (D.C.1978). We may reverse only where the government has produced no evidence from which a reasonable mind might infer guilt beyond a reasonable doubt. *Frendak, supra*, 408 A.2d at 371; *Curley v. United States*, 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232 (D.C.Cir.) *cert. denied*, 331 U.S. 837, 67 S.Ct. 1151, 91 L.Ed. 1850 (1947).

First degree murder is a calculated and planned killing while second degree murder is unplanned or impulsive.[2] *Hall, supra*, 454 A.2d at 317; *Harris v. United States*, 375 A.2d 505, 507 (D.C.1977) (quoting *Austin v. United States*, 127 U.S.App.D.C. 180, 188, 382 F.2d 129, 137 (1967)). The government must therefore prove beyond a reasonable doubt that the accused acted with premeditation and deliberation, the thought processes necessary to distinguish first degree murder from second de-

---

1. Because this is a first-degree murder case, we consider only the evidence presented during the government's case-in-chief. *Frendak v. United States*, 408 A.2d 364, 370 n.7 (D.C.1979); *Belton v. United States*, 127 U.S.App.D.C. 201, 203, 382 F.2d 150, 152 (D.C.Cir.1967).

2. As used hereafter, we refer to first degree murder under D.C.Code § 22–2401 in terms of premeditated and deliberated murder and not felony murder.

gree. *See Hall, supra,* 454 A.2d at 317. As set forth in *Frendak, supra,* 408 A.2d at 371 (citations omitted):

> To prove premeditation, the government must show that a defendant gave "thought before acting to the idea of taking a human life and [reached] a definite decision to kill." Deliberation is proved by demonstrating that the accused acted with "consideration and reflection upon the preconceived design to kill; turning it over in the mind, giving it second thought." Although no specific amount of time is necessary to demonstrate premeditation and deliberation, the evidence must demonstrate that the accused did not kill impulsively, in the heat of passion, or in an orgy of frenzied activity.

 "[S]ome appreciable time must elapse" between the formation of design to kill and actual execution of the design to establish that reflection and consideration amounted to deliberation. *Bostic v. United States,* 68 App.D.C. 167, 170, 94 F.2d 636, 639 (1937), *cert. denied,* 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1938). The time need not be long. *Doepel v. United States,* 434 A.2d 449, 453 (D.C.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). Thus, the government is not required to show that there was a "lapse of days or hours, or even minutes," *Bostic, supra,* at 170, 94 F.2d at 639, and the time involved may be as brief as a few seconds. *Hemphill v. United States,* 131 U.S.App.D.C. 46, 48, 402 F.2d 187, 189 (1968). Although reflection and consideration, and not lapse of time, are determinative of deliberation, *Bostic, supra,* 68 App. D.C. at 169, 94 F.2d at 639, *Harris, supra,* 375 A.2d at 508, "[l]apse of time is important because of the opportunity which it affords for deliberation." *Bostic, supra,* 68 App.D.C. at 169, 94 F.2d at 639 (citation omitted). The evidence of premeditation and deliberation must be sufficient to persuade, not *compel,* a reasonable juror to a finding of guilty. *Crawford v. United*

*States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967) (emphasis in original).

## II

Viewing the evidence most favorably to the government,[3] the government's case-in-chief showed that during the investigation of a stolen car, two police officers saw the stolen car pull into the parking lot of 3729 Jay Street, N.E. They ordered the driver to stop by shouting, "Police. Hold it." The driver of the car, appellant, jumped out, looked at the officers, and ran toward an apartment complex; Officer Lunning, with his gun drawn, pursued. Appellant ran through the archway of 3749 Jay Street, N.E. and then through the open door of the Davis' apartment at 3712–A Hayes Street, N.E. Three young girls, ages approximately 14, 13 and 9, were sitting at a table doing their homework. Appellant asked to use the telephone, and after dialing, he asked the responding party "[Are] they still out there?" He sat down at the table, where the girls were sitting, and held his head in his hands.

Officer Lunning entered the open door of the apartment holding his gun in front of him and told appellant "Police, you are under arrest." Appellant asked, "For what?" When appellant refused to cooperate with being handcuffed, the officer said, "Do you want me to blow your m_____ f_____ head off?" Appellant stood up. As the officer reached for his hand to put on the handcuffs, appellant said, "You are not going to put those things on me." Appellant grabbed the officer in a bear hug around the waist. Eventually the two men fell over a table. The officer's gun, which had been pointed downwards as he had tried to handcuff appellant, dropped onto the floor.

The two men scuffled, rolling over each other, until appellant had the officer in a position where he could not move: appellant had his knee in the officer's chest and, with his hands, held down the officer's hands. At this point, according to two of

---

**3.** *Hall, supra,* 454 A.2d at 317 (citations omitted).

the girls, the officer told appellant, "It wasn't worth it." Then, with the officer still flat on his back, appellant reached out and grabbed the loose gun. He proceeded to hold the gun to the officer's chest. The officer now repeated, "It wasn't worth it." One of the girls then ran back to the back of the apartment, a distance of approximately twenty feet. She was inside the bathroom when, within seconds, she heard a shot. Another girl ran from the apartment, approximately sixteen feet, and heard a shot while outside. She next saw appellant coming down the steps as he was leaving the apartment complex holding the gun in his hand. The officer followed shortly, holding his chest and eventually fell to the ground.

The gun was fired approximately thirty to thirty-six inches from Officer Lunning's body while he was lying on the floor.[4] The bullet entered at the midline of the top of the officer's abdomen on the right side. Appellant was uninjured when he was arrested at the scene, suffering only scrapes on his kneecap. Appellant was six feet four inches tall and weighed 218 pounds. Officer Lunning was five feet nine inches tall and weighed approximately 220 pounds.

A neighbor testified that when appellant ran into 3694 Hayes Street, N.E. and asked to use her sister's telephone, she heard him say into the telephone, "I just shot the police; could you come and get me." He also said he "had something on him and the police were chasing him so he hit [the officer] with the gun." The sister who lived in the apartment corroborated this testimony, and also testified that appellant told her he was carrying drugs and offered her money if she would hide him.

### III

"Premeditation and deliberation may be inferred from sufficiently probative facts and circumstances." *Hall, supra,* 454 A.2d at 317.[5] In the instant case the jury could reasonably find that when appellant sat at the table, after making the telephone call, he was anticipating the officer's arrival and planning how to escape. He knew the officer had drawn his gun, and a juror could infer that appellant realized he would have to disarm the officer in order to escape. Appellant, who was five inches taller, and described by one of the girls as much larger than the officer, initiated the struggle while the officer was pointing his gun at him. He struggled with the officer and caused him to drop his gun. He then continued to struggle with the officer until he gained complete physical control of the officer. One of the girls testified that the officer did not have a chance to get the loose gun. A juror could reasonably find that when the officer said,

---

4. The firearms expert testified that he allowed a six inch tolerance for certain variables, such as position of the gun when it was fired or the manner in which the officer's clothing through which the bullet passed was handled later.

5. This court has sustained a trial court's finding of sufficient evidence to submit the issue of premeditation and deliberation to the jury where a planned and calculated intent to kill could be inferred from: evidence of prior threats hostility between the accused and the victim, *Harris, supra,* 375 A.2d at 508; evidence of a motive which suggested a purposeful or reasoned killing, *Jones, supra,* 477 A.2d at 246–47 (fight about money); *Hall, supra,* 454 A.2d at 317–18 (jilted lover); the manner and circumstances of the killing, for example, an interruption and subsequent continuation of the killing, *Hall, supra,* 454 A.2d at 317–18 (having to adjust gun during murder); evidence of the accused's behavior before the killing, *Frendak, supra,* 408 A.2d at 371 (keeping apprised of the victim's schedule and stalking him); *O'Connor v. United States,* 399 A.2d 21, 26 (D.C.1979) (anticipating and preparing for a confrontation). Also, in the absence of evidence "truly probative of premeditation and deliberation," the origin of the murder weapon is of "undeniable significance." *Hemphill, supra,* 131 U.S.App.D.C. at 49, 402 F.2d at 190 ("prosecutor's failure to bring out whether defendant brought murder weapon with him" important factor in finding no premeditation and deliberation); *compare Belton, supra,* 127 U.S.App.D.C. at 203, 382 F.2d at 152 (bringing loaded gun to scene permits inference of premeditation and deliberation; *Frendak, supra,* 408 A.2d at 364 (same); *Hall, supra,* 454 A.2d at 318 (same); *O'Connor, supra,* 399 A.2d at 26 (same).

"It wasn't worth it," and appellant grabbed the gun, the officer was pleading for his life or at least suggesting to appellant that avoiding arrest for stealing a car was not worth assaulting an officer. Since there was nothing blocking appellant's escape from the apartment, a juror could further infer that by grabbing the loose gun and holding it to the officer's chest instead of fleeing, appellant had made the decision to kill the officer.

Before a shot was fired, however, the officer had time to repeat, "It wasn't worth it." Two of the girls also had time to run from the room into another part of the apartment or outside of the apartment building. In addition, appellant rose up and stood over the officer. At no time was anything or anyone impeding appellant's escape from the apartment. Considering the lapse of time before appellant fired the gun, a juror could reasonably infer from all the circumstances that the officer's second plea was asking appellant to reconsider the decision to kill him, and that appellant had sufficient time to, and did reaffirm his decision to kill the officer. Although these events occurred within a short period of time, there was evidence before the jury from which it could find that there were two significant pauses in the action—when appellant had immobilized the officer and when the officer repeated his plea—which afforded appellant time to premeditate and deliberate.

■ Appellant argues that the absence of eyewitness testimony about the events which occurred from the time appellant had the gun pointed in the officer's chest and the firing of the gun, demonstrates the jury was left to speculate on whether the officer's remarks had any impact on defendant's thought process. He notes that no evidence was presented of his facial gestures or hand movements which would indicate the officer's remarks affected him. Of course, eyewitness testimony is not required for the government to meet its burden of proof; circumstantial evidence will suffice. *Jackson v. United States, supra,*

395 A.2d at 102. This jurisdiction has long recognized that the jury is entitled to consider all of the circumstances preceding and surrounding the shooting to determine "whether reflection and consideration amounting to deliberation actually occurred." *Bostic, supra,* 68 App.D.C. at 169–170, 94 F.2d at 638–39 (citations omitted).

Appellant also urges us to hold that like the appellant in *Bostic, supra,* 68 App.D.C. at 171, 94 F.2d at 640, he acted in fear, panic and self-defense arising from the officer's threat, when he entered the apartment, to shoot appellant's "head off," and the officer's attempt later to grab his gun as appellant pointed it at him. He relies also on the testimony of one of the girls that the officer was acting kind of crazy and appellant looked frightened. Evidence that the officer had tried to grab his gun was not in evidence during the government's case-in-chief. But, in any event, we are satisfied that a juror could reasonably infer from the government's evidence that the totality of the circumstances cast substantial doubt on appellant's claim that he fired out of fear, in a panic, or in self-defense when the officer allegedly reached for the gun.

The government's evidence showed that although he was facing an officer with a drawn gun, appellant, having waited for the officer to arrive, initiated the physical struggle with him. Even after he had immobilized the officer and had grabbed the gun, appellant did not shoot immediately, but held the gun in the officer's chest. When he fired the gun he did not fire a series of shots, as though in a panic, but a single shot, which went directly into the right side of the officer's chest. Combined with the evidence of appellant's motive to escape, these circumstances could cause a reasonable juror to conclude that appellant did not shoot in a panic but acted with deliberation, having decided to kill the officer in order to assure his escape, and that

he reflected upon his decision before pulling the trigger, and did not shoot in a frenzy or in the heat-of-passion.[6]

Defense counsel argued contrary inferences to the jury, and the trial court gave the standard instructions on first-degree murder, second-degree murder, the lesser included offense of voluntary manslaughter while armed, and self-defense. No instructional errors are claimed, and the jury verdict .form required the jury to make specific decisions on all of these offenses. The record does not reflect any reason to suggest that the jury did not follow the instructions. *Sherrod v. United States,* 478 A.2d 644, 659 (D.C.1984). Accordingly, we find no reason to disturb the trial court's implicit finding[7] that the evidence viewed most favorably to the government is not such that a reasonable juror must have a reasonable doubt, and the issue was properly left to the jury.

*Affirmed.*

---

6. Appellant's appearance shortly after he shot the officer is also consistent with such a conclusion. The woman who was in her sister's apartment in the neighborhood, testified that when he admitted he had shot an officer, appellant did not appear to be frightened, only confused, and that he was still clearly focusing on how to escape.

7. In *Curley, supra,* 81 U.S.App.D.C. at 392–93, 160 F.2d at 232, the Circuit court defined the trial judge's role in ruling upon a motion for a judgment of acquittal:

[W]hether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. In a given case, particularly one of circumstantial evidence, that determination may depend upon the difference between pure speculation and legitimate inference from proven facts.