Donnell D. PORTER, Appellant,

v.

UNITED STATES, Appellee.

Rhasaan J. Alston, Appellant,

v.

United States, Appellee.

Norvelle L. Nelson, Appellant,

v.

United States, Appellee.

No. 97–CF–134, 99–CO–205, 00–CO–1511, 01–CO–724.

District of Columbia Court of Appeals.

Argued April 23, 2003.

Decided June 19, 2003.

M. Elizabeth Kent, appointed by the court, for appellant Porter.

Thomas T. Heslep, Alexandria, VA, appointed by the court, for appellant Alston.

Peter H. Meyers, appointed by the court, for appellant Nelson.

David B. Goodhand, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Joan Draper, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and NEBEKER, Senior Judge.

WAGNER, Chief Judge:

Appellants, Rhasaan Alston, Donnell Porter and Norvelle Nelson, were indicted on multiple counts related to the robbery of two men and the murder of one of them during the course of the robbery. Following a jury trial, each of the appellants was convicted of two counts of armed robbery (D.C.Code §§ 22–2901,[1] –3202[2] (1994));first degree murder while armed (premeditated) (D.C.Code §§ 22–2401,[3] – 3202 (1994));first degree felony murder (D.C.Code §§ 22–2401, –3202 (1994)); and assault with intent to kill while armed (AWIKWA) (D.C.Code §§ 22–501,[4]–3202 (1994)). Each of them was also convicted of possession of a firearm during the commission of a crime of violence (PFCV) (D.C.Code § 22–3204(b)[5] (1994)) and carrying a pistol without a license (CPWL) (D.C.Code § 22–3204(a)). The following issues are raised on appeal by one or more of the appellants: (1) the evidence was insufficient to support Alston's murder conviction; (2) the trial court erred in an evidentiary ruling involving prior descriptions and identifications of Alston; (3) the prosecutor made improper rebuttal argument and argued facts not in evidence; (4) Porter's trial counsel was ineffective; and (5) the trial court abused its discretion in denying motions by Porter and Nelson for a new trial based upon newly discovered exculpatory evidence which Alston is now willing to provide. Finding no reversible error, we affirm, but remand for the trial court to vacate the merged offenses.

## I.

The charges arose out of the armed robbery of Modibo Hylton and Mamadou Mbaye and the murder of Mbaye during the course of the robbery. The evidence showed that Mbaye, sometimes assisted by Hylton, sold marijuana. About a week or two before the offenses took place, Alston

1. D.C.Code § 22–2901 has been recodified as D.C.Code § 22–2801 (2001).

2. D.C.Code § 22–3202 has been recodified as D.C.Code § 22–4502 (2001).

3. D.C.Code § 22–2401 has been recodified as D.C.Code § 22–2101 (2001).

4. D.C.Code § 22–501 has been recodified as D.C.Code § 22–401 (2001).

5. D.C.Code § 22–3204 has been recodified as D.C.Code § 22–4504 (2001).

approached Hylton about arranging a drug sale. The day before the shootings, Hylton saw Alston at the Giant supermarket, and Alston asked him what was the "verdict." Hylton told Alston that he had to talk with his friend, referring to Mbaye, and gave Alston his pager number so that he could contact him later. On June 5, 1994, Alston paged Hylton about the deal, and Hylton and Mbaye went to Kennedy playground to meet Alston. Alston was there when they arrived, but he said that he had to leave to get money for the deal. Alston returned with Porter, and they conversed at a picnic table. Alston left again and returned with Nelson, who was to check the quality of the drugs. Mbaye showed Alston and Nelson the marijuana. When Alston asked Nelson what he thought of the "weed," Alston, Porter and Nelson pulled out guns. Hylton testified that Alston took a pager from him, obtained the marijuana from Mbaye and ordered both men to lie down. Nelson hit Mbaye with his weapon, and Mbaye fell. Hylton had his hands in the air when he heard a shot, looked up and saw Alston and Porter pointing guns at him. Hylton testified that Alston fired at him, and the bullet grazed his face and ear. Hylton went under a bench where he saw Mbaye, who had a gunshot wound to the head from which he later died. Hylton saw Porter point his weapon at him and fire, hitting him in the side and shoulder.

One witness, Ms. Williams, who was sitting outside her apartment complex near the Kennedy playground, testified that after hearing what she thought were firecrackers, she saw Alston, Porter and Nelson, whom she knew from the neighborhood, run past her. Another witness, Ms. Fletcher, who was also there, testified that after hearing the shot, she saw Porter, whom she knew, and a man with plats running away. Officer Darrelle Crandall, a Metropolitan Police officer, was in the area, heard the shots, and arrived at the scene in about thirty seconds. He testified that he saw three people running from the scene, "going over the hill." Officer Crandall found a gun in the area where he had seen the men. The weapon was examined for fingerprints, and Porter's right thumb print was found on the gun.

## II.

### Sufficiency of the Evidence

Alston argues that the evidence was insufficient to show that he aided and abetted or intentionally participated in Mbaye's murder or that it was a probable consequence of the robbery. He contends that the evidence points to Nelson as the person who shot Mbaye. Further, he argues that there was insufficient evidence to show that Mbaye's murder was in furtherance of the drug sale and robbery or that he had any knowledge that the killing would occur.

In reviewing a claim of evidentiary insufficiency, we view the evidence in the light most favorable to the government, recognizing the right of the trier of fact to resolve issues of credibility and to draw justifiable inferences. Zanders v. United States, 678 A.2d 556, 563 (D.C. 1996) (citing (Duane) Dyson v. United States, 450 A.2d 432, 436 (D.C.1982) (other citation omitted)). This court will reverse only where the government has failed to present evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt. In re M.I.W., 667 A.2d 573, 575 (D.C.1995). Applying that standard, we conclude that the evidence was sufficient to support Alston's convictions.[6]

6. The government argues that since Alston argued his motion for judgment of acquittal in

■ To obtain a conviction of premeditated murder, the government must prove that the defendant acted with premeditation and deliberation, which may be inferred from the circumstances surrounding the killing. *Thacker v. United States,* 599 A.2d 52, 57 (D.C.1991) (citations omitted). "Premeditation requires proof that the defendant gave 'thought before acting to the idea of taking a human life and [reached] a definite decision to kill.'" *Id.* (quoting *Watson v. United States,* 501 A.2d 791, 793 (D.C.1985) (other citations omitted)). Proof of deliberation requires a showing that the defendant acted with "'consideration and reflection upon the preconceived design to kill, turning it over in the mind, giving it second thought.'" *Id.* To prove premeditation and deliberation, it is not necessary that the evidence show that a particular period of time elapsed between the formation of the design to kill and the actual killing. *Watson,* 501 A.2d at 793 (citing *Frendak v. United States,* 408 A.2d 364, 371 (D.C.1979)). The time involved may be minutes or just a few seconds. *Id.* (citing *Hemphill v. United States,* 131 U.S.App. D.C. 46, 48, 402 F.2d 187, 189 (1968)). However, the time lapse is important because it can show an opportunity for deliberation. *Id.* (citation omitted). The evidence must be sufficient to show that the accused did not act impulsively or in the heat of passion. *Id.* (citing *Frendak,* 408 A.2d at 371).

■ The government argues that the evidence clearly established that Alston aided and abetted Mbaye's murder. A defendant may be convicted of the principal offense if he aids and abets its commission. Although mere presence at the scene is not enough to establish guilt under an aiding and abetting theory, the additional proof of "conduct which designedly encourages or facilitates a crime will support an inference of guilty participation in the crime as an aider and abettor." *Jefferson v. United States,* 463 A.2d 681, 683 (D.C.1983) (citing *Quarles v. United States,* 308 A.2d 773, 774–75 (D.C. 1973)). To prove aiding and abetting, the government had to prove that: "(a) a crime was committed by someone; (b) the accused assisted or participated in its commission, and (c) his participation was with guilty knowledge." *Id.* (citing *Byrd v. United States,* 364 A.2d 1215, 1219 (D.C. 1976)). To be an aider or abettor in the commission of a charged offense, the accused "must be concerned in the commission of the specific crime with which the [principal] defendant is charged, he must be an associate in guilt of that crime, a participant in that offense as a principal or accessory." *Roy v. United States,* 652 A.2d 1098, 1104 (D.C.1995) (quoting *Risinger v. United States,* 236 F.2d 96, 99 (5th Cir.1956)) (emphasis deleted).

■ Viewed in the light most favorable to the government, the evidence was clearly sufficient to support Alston's con-

the trial court on the grounds that there was no evidence of premeditation or that he robbed Mbaye of narcotics, his argument for reversal on the ground of the absence of a causal link between the killing and the underlying felony must be reviewed for plain error. The government cites *Davis v. United States,* 367 A.2d 1254 (D.C.1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977), in support of its argument. In *Davis,* this court held that the appellant failed to preserve his objection to venue where he

moved for judgment of acquittal specifying other grounds only. *Id.* at 1268–69 (citation omitted). Whether the *Davis* rule applies in this situation, this court has apparently not decided definitively. *See Abdulshakur v. District of Columbia,* 589 A.2d 1258, 1264 (D.C. 1991); *see also Newby v. United States,* 797 A.2d 1233, 1237–38 (D.C.2002). We need not do so here because, even assuming the issue was preserved, the evidence was clearly sufficient to support the challenged verdicts. *See id.*

viction of murder on an aiding and abetting theory. The evidence showed that Alston was a central figure in the overall criminal venture. It was Alston who arranged the meeting with Hylton, ostensibly to make a marijuana purchase. He came to the meeting with his gun.[7] Alston introduced Nelson and Porter into the situation under circumstances suggesting that the group had a prearranged plan. After asking Nelson what he thought of the "weed," all three appellants pulled their weapons as if on cue. There was evidence that, during the robbery, Alston took the marijuana from Mbaye, the murder victim, and the pager from Hylton. There was also testimony that Alston shot at Hylton, from which the jury could infer reasonably that the plan included killing both victims and that Alston's actions facilitated one of the others killing Mbaye. Such evidence is sufficient to establish that Alston aided and abetted the commission of Mbaye's murder and the robbery upon which the felony murder count is based. *See Jefferson, supra,* 463 A.2d at 683 (proof of presence at the crime scene and conduct that "designedly encourages or facilitates a crime will support an inference of guilty participation as an aider and abettor").

### III.

*Claim of Improper Argument*

A. *Burden Shifting Argument*

All of the appellants argue that the prosecutor's rebuttal argument was improper and warrants reversal. Principally, they challenge a portion of the argument where the prosecutor stated that "[e]very defendant is entitled to a—a—the strongest defense possible that could be put on." They contend that this portion of the argument impermissibly shifted the burden of proof and suggested that they were required to put on a defense. They also argue that the prosecutor exceeded the scope of the defense arguments by outlining the application of the aiding and abetting instruction to the facts of this case. Before addressing each of these claims, we outline briefly the legal principles that will guide our decision.

In evaluating claims of so-called prosecutive error, we must determine first whether the challenged comments were improper.[8] *Peoples v. United States,* 640 A.2d 1047, 1056 (D.C.1994) (citing *McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (other citations omitted)). If the statements were improper, we then consider, viewing the comments in context, " 'the gravity of the [impropriety], its relationship to the issue of guilt, the effect of any corrective action by the trial judge, and the strength of the government's case.' " *McGrier,* 597 A.2d at 41 (quoting *Dixon v. United States,* 565 A.2d 72, 75 (D.C.1989)). If it is determined that the argument was improper, and the appellant has preserved the issue for appellate review, we will reverse only if it is shown that substantial prejudice resulted. *Id.* (citing *Williams v. United States,* 483 A.2d 292, 297 (D.C.1984), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985)).

---

7. The fact that the accused brings a weapon to the murder scene is probative of the elements of deliberation and premeditation required for first degree murder. *Thacker, supra,* 599 A.2d at 57 (citing *McAdoo v. United States,* 515 A.2d 412, 427 (D.C.1986) (other citation omitted)).

8. Although such challenges are directed to the prosecutor's argument, it is the court's function to review the record for legal error or abuse of discretion by the trial court, rather than by counsel, in ruling or failure to intervene when circumstances require it. *Irick v. United States,* 565 A.2d 26, 33 (D.C.1989) (citation omitted).

If the claim was not preserved in the trial court, we review for plain error. *See Plummer v. United States*, 813 A.2d 182, 190 (D.C.2002) (citing *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976)). Under the plain error standard, "we will reverse only if the error is obvious and 'so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Id.* Applying theses principles, we consider appellants' claims.

Appellants argue that the prosecutor's argument to the effect that every defendant is entitled to the strongest possible defense impermissibly shifted the burden of proof and suggested to the jury that they were required to put on a defense. To fairly assess appellants' argument, the prosecutor's remarks should be placed in context in order to better understand their import. The prosecutor presented the argument in the following way:

> ... And the Judge will instruct you on reasonable doubt, and the Judge will instruct you on your duties. And one of the things that the Court will say to you is that if the Government has not proved its case, then you must find the defendant innocent. And we all in this courtroom, the Judge, the defense counsel, all of us believe in our system of justice. [Defense counsel] is absolutely right, it is the best. *Every defendant is entitled to a—a—the strongest defense possible that could be put on.* Every defendant is entitled to come before a jury of their peers. And we who live in the city are responsible, not one, not a judge, not a prosecutor, but jurors from the city are responsible for making that decision.

(Emphasis added.)

▮ Of course, every defendant in a criminal trial has a right not to testify or

not to produce any evidence, and the burden of proving guilt rests with the government. Whether the prosecutor's comment, reasonably construed, can be interpreted to suggest otherwise, *i.e.*, that the defense had some obligation to present evidence, if they had any, is at least arguable. The prosecutor stated that the defendants were entitled to the strongest possible defense that could be put on. Here, however, each of the defendants rested without testifying or calling witnesses. One not familiar with the trial process might have taken the comment to mean that the appellants, who were entitled to put on the best defense possible, should put on evidence, if they had any. Detracting from this interpretation is that during that same portion of the argument, the prosecutor informed the jury that the court would instruct them that if the government did not prove its case, the jury must find the defendants innocent. Thus, he informed the jury of the government's burden to prove its case or return a verdict of not guilty, without the need for the defense to present anything. A reasonable interpretation of the disputed remark might be that the defendants had a right to have counsel to challenge vigorously the government' case, as they did here. Nevertheless, the prosecutor's ambiguous argument was risky because of its potential to leave the jury with the impression that the defendants, who had presented no defense witnesses, were expected to provide proof of innocence, if any existed, instead of relying upon the government's burden to prove guilt. *See Golsun v. United States*, 592 A.2d 1054, 1059 (D.C.1991).

▮ Assuming *arguendo* that the comment was improper, and applying the relevant factors, we perceive no substantial prejudice warranting reversal.[9] *See Diaz*

---

9. Appellants preserved the issue for review. All objected to the argument, and Porter's

counsel initially requested a curative instruction, which the trial court stated would be

*v. United States,* 716 A.2d 173, 181 (D.C. 1998) (citation omitted). In determining whether substantial prejudice resulted from the comments, we consider " 'whether we can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " *Id.* (quoting (*Phillip* ) *Dyson v. United States,* 418 A.2d 127, 132 (D.C.1980)). In making this determination, we consider, in context, the remark's gravity, its relationship to guilt, the effect of the court's corrective instructions, and the strength of the government's case. *McGrier, supra,* 597 A.2d at 41 (citation omitted).

The gravity of the remark was ameliorated by its context in the overall argument as previously discussed. First, it was a single remark in a lengthy trial, made as a part of the prosecutor's description of the advantages of our system of justice. Under these circumstances, the severity of the remark was lessened. Second, the trial court took strong corrective measures, expanding significantly the standard jury instruction on burden of proof in final instructions.[10] In addition, the prose-

cutor reminded the jury immediately upon resuming argument that it is the government which has the burden of proof and that this remained with it at all times. More importantly, the court's instructions made clear that the burden of proof rested with the government, and it did not shift even slightly throughout the trial. Given the court's detailed and clear instruction on burden of proof, we perceive no way that the jury could have been misled by the prosecutor's single remark to believe that the burden of proof shifted to the defense at any time.

Further, factoring in the direct relationship of the challenged comment to the issue of guilt and the strength of the government's case, we are persuaded that substantial prejudice warranting reversal did not result. Of course, the jury's understanding of where the burden of proof rests is a critical factor in its determination of a defendant's guilt. However, for the reasons previously stated, we are satisfied that they were well informed on the law on this point. Finally, the government's case against appellants was strong. For all of these reasons, we conclude that

---

given in the final instructions to the jury. The appellants moved for a mistrial. They argued essentially that the prosecutor's argument suggested improperly that they had to put on a defense. The trial court denied the mistrial motions.

10. The court instructed the jury in pertinent part:

Every defendant ... has a right to be presumed innocent.... And as you remember, I stressed that at the start of this case, the presumption of innocence began with these defendants before you were sworn, ... it stayed with each of them independently throughout the course of this trial and remains with them now ... unless and until any particular defendant has been proven guilty of a particular charge by the Government beyond a reasonable doubt.

There is only a single burden of proof, the Government has that burden of proof, and

that burden of proof doesn't shift to a defendant whether the defendant cross-examines vigorously or cross-examines not at all. The burden of proof is always on the Government to persuade you that something is so. The burden is never on the defendant to persuade you that something is not so.

The law doesn't require the defendant to convince you of anything, it does not require the defendant to prove to you that he is innocent. That is an impossibility, and it's an unfair burden if you even slightly shift the burden to the defendant. If you say in your deliberations, well, what does [the defendant] say, then you are shifting the burden unfairly and unconstitutionally.

The Government has the burden of proving beyond a reasonable doubt ... every element of each charge.

the challenged remark, assuming it was improper, was insufficient to result in substantial prejudice. *See McGrier, supra,* 597 A.2d at 41.

### B. *Exceeding the Scope of Defense Argument*

■■■■ Appellants argue that the prosecutor improperly exceeded the scope of their arguments by arguing in rebuttal the aiding and abetting theory. Generally, the prosecutor should not develop new arguments on rebuttal. *Hall v. United States,* 540 A.2d 442, 448 (D.C.1988) (citing *Moore v. United States,* 120 U.S.App. D.C. 173, 175, 344 F.2d 558, 560 (1965) (other citation omitted)). However, this is not an inflexible rule, leaving to the trial court to determine, in its discretion, how far the rebuttal may extend. *Id.* (citing *Bailey v. State,* 440 A.2d 997, 1003 (Del.1982)). A principal purpose of the rule is to protect the defense from surprise. *Id.* Here, the argument was not a surprise, as the government had addressed its aiding and abetting theory in its opening argument. Thus, appellants had at least an opportunity to respond to it following the initial argument, even if not to the rebuttal. None of the appellants addressed the aiding and abetting issue in closing argument.

■■■■ In *Hall,* in assessing a similar argument, we found it crucial to finding no abuse of discretion in the trial court's ruling that the defense counsel had touched slightly upon the alibi theory that the government argued in rebuttal. 540 A.2d at 448–49. Indeed, we said that if defense counsel had said nothing at all about it, it would have been a different case. *Id.*

Here, however, it seems clear that the defense found no reason to address the aiding and abetting argument when it had the opportunity. In light of the arguments appellants made, which essentially challenged the credibility of the witnesses and value of the evidence as grounds for reasonable doubt, it seems that defense counsel made a rational judgment not to address directly the government's aiding and abetting theory. Under these circumstances, unlike those in *Hall,* we do not consider it controlling to our decision that the defense may not have opened the door to the argument. This is not a case where the prosecutor made only perfunctory remarks in opening argument, reserving the real argument until rebuttal so as to deprive appellants of any chance to address critical points. *See Bailey, supra,* 440 A.2d at 1003.[11] Therefore, we find no basis for reversal.

### IV.

### *Evidentiary Challenges*

### A. *Prior Consistent Statements*

■■■■ Alston argues that the trial court erred in allowing into evidence Hylton's prior consistent statements as to his identification and role in the shooting. This argument relates to the testimony of Detective Leech who recounted Hylton's identification of the appellants from a photo array and the role that each played in the crimes. During his testimony, he used the photo array from which Hylton made his identifications. Alston does not challenge the admissibility, nor could he, of the

---

11. In *Bailey, supra,* the Delaware Supreme Court reversed a murder conviction on the ground that the trial court abused its discretion in allowing the State to leave virtually all of its argument until rebuttal, while making only a five minute opening with only a passing reference to one of its witnesses. *Bailey,*

440 A.2d at 1000–01. The *Bailey* court reasoned that while the trial court has broad discretion in such matters, it does not permit the court "to oversee a blow to a defendant's right to a fair trial via the State's sandbagging." *Id.* at 1003.

prior descriptions and identifications. *See Harley v. United States*, 471 A.2d 1013, 1015 (D.C.1984) (Extrajudicial identification testimony is admissible as substantive evidence through a person who was present at the identification if the declarant is available for cross-examination at trial.) (citations omitted). However, Alston argues that the detailed description that the detective provided concerning his role in the crimes was impermissible.

■ Although prior identifications are admissible under an exception to the hearsay rule, an account of the complaining witness' description of the offense itself is admissible under this exception only to the extent necessary to make the identification understandable to the jury. *Williams v. United States*, 756 A.2d 380, 387 (D.C. 2000) (citing *Battle v. United States*, 630 A.2d 211, 215 (D.C.1993)); *see also Johnson v. United States*, 820 A.2d 551, 559 n. 4 (D.C.2003), *as amended*, June ___, 2003. Much of Detective Leech's testimony involved admissible identification testimony. Other portions identified Alston's role in the several crimes. For example, the detective testified that Hylton identified Alston (S–1) as the person who took the marijuana and pager and the person who shot at him. The government argues persuasively that such limited evidence is admissible under the exception to identify Alston as a participant in the robberies and in the AWIKWA. Some limited reference in the identification to the criminal act is permissible.[12] *See id.* (Evidence that the child complainant said that the defendant was the person with whom she was having sex is admissible under the identification exception.); *see also Battle*,

630 A.2d at 215. We agree that there were instances when the witness exceeded the permissible bounds, recounting details of Hylton's account of the offenses unnecessary to make the identification understandable. The trial court intervened upon objection of defense counsel and *sua sponte* admonished the witness not to tell the story. It was an instruction that the witness did not seem to comprehend.

■ The exclusion of prior consistent statements is intended to avoid the prejudice of unfairly bolstering the witness' credibility. *Daye v. United States*, 733 A.2d 321, 327 (D.C.1999). However, we have recognized that the harm is less serious than the " 'inadmissible introduction of clearly prejudicial evidence.' " *Id.* (quoting *McKenzie v. United States*, 659 A.2d 838, 841 n. 9 (D.C.1995)), *cert. denied*, 517 U.S. 1127, 116 S.Ct. 1369, 134 L.Ed.2d 534 (1996), (in turn quoting *Jordan v. United States*, 633 A.2d 373, 377 (D.C.1993), *cert. denied*, 513 U.S. 854, 115 S.Ct. 156, 130 L.Ed.2d 95 (1994)). Thus, "only in a case where the government's proof of guilt was 'marginal' have we thought the prejudice from this impermissible bolstering enough to warrant reversal without more." *Id.* (citing *Tibbs v. United States*, 359 A.2d 13, 16 (D.C.1976)). This is not such a case, as the government's case against Alston was strong. Moreover, the detective's testimony was brief and the details recounted, to the extent inadmissible, were limited.[13] Although Alston argues that the government was able to place before the jury almost every aspect of his involvement in the crimes, much of the story came in properly to identify him as the person who

---

12. Alston concedes that some limited testimony about the participant's role is permissible. He cites, for example, that it would have been permissible for the witness to say "that S–1 was the person who set up the deal, or something like that."

13. The issue raised might have been addressed readily through a curative instruction; however, counsel did not request one.

committed a particular criminal act. *See Battle, supra,* 630 A.2d at 215. Further, Hylton had testified and had been cross-examined at length on his account of the crimes. Given these factors, we conclude that reversal is not warranted on the basis claimed.

## B. *Admissibility of Telephone Number Linked to Alston*

■■■ Alston argues that the trial court erred in admitting into evidence Detective Leech's notes showing a telephone number Hylton told him that he reached Alston at to set up the meeting for the drug transaction that night. He contends that this evidence was inadmissible hearsay. Alston's cousin, Sherrie Hill, testified and linked the telephone number to her father's residence where Hylton sometimes stayed.[14] The trial court admitted the evidence under the identification exception to the hearsay rule, telling the parties initially that it would strike the testimony if they later provided any reason for doing so. No reason was ever proffered. The government argues that the notation of the telephone number is admissible under the identification exception to the hearsay rule.[15] *See Morris v. United* States, 398 A.2d 333, 338 (D.C.1978). Even assuming

arguendo that the evidence was not admissible, it was not so prejudicial as to warrant a new trial. The evidence showed that Hylton positively identified Alston and the other assailants under circumstances tending to show reliability of the identifications.

## C. *Police Photo of Nelson and Leading Questions*

■■■ Nelson argues that the prosecutor improperly elicited evidence showing that a police photograph of him had been taken before the offense in this case. The photograph depicted Nelson with plats in his hair, and witnesses had identified one of the assailants as wearing plats. In identifying the photograph, Detective Leech testified that it was a police department photograph. The trial court declined a defense request to approach the bench at that point. The prosecutor then asked the detective the date of the photograph, and the detective gave a date before the offenses in this case occurred.[16] Nelson moved for a mistrial, and the trial court denied it, concluding that an appropriate instruction would be sufficient. Subsequently, the trial court gave an instruction to the effect that the fact that the police

---

14. The telephone number was transcribed incorrectly at first by the court reporter. However, it was ultimately corrected and shown to be the same number. Therefore, we do not address arguments based on the earlier incorrect transcription.

15. Alternatively, the government argues that it could have been admitted as non-hearsay to corroborate the association and not for the truth of the matter asserted. That might have been a viable alternative argument if Hylton had testified at trial that the number at which he reached Alston was the number he gave Detective Leech. However, Hylton testified only that the police asked him the number during the interview, that he remembered it at the time and that Detective Leech took notes during the interview.

16. Nelson cites this as prosecutorial error. It does not appear that the prosecutor acted with an intent to prejudice appellant by showing that the police secured the photograph before he was arrested in this case. It appears that the prosecutor stepped into this pit somewhat accidentally. It was the officer who volunteered that it was a police identification photograph, and the trial court overruled the defense objection at that point. There was no objection made when the prosecutor asked for the date, once he sought to show Nelson's hairstyle near the time of the offenses. We do not view this as properly characterized as prosecutive error. However, even if it were, our decision on this issue would be no different.

have a photograph of a person does not mean the person has ever committed an offense.

■ We are not persuaded that the trial court abused its discretion in denying the mistrial motion. The reference was brief in this lengthy trial, and the court gave a curative instruction. We presume that the jury follows the court's instructions. *See McCoy v. United States,* 760 A.2d 164, 186 (D.C.2000), *cert. denied,* 532 U.S. 987, 121 S.Ct. 1636, 149 L.Ed.2d 496 (2001); *Allen v. United States,* 603 A.2d 1219, 1224 (D.C.1992) (en banc), *cert. denied,* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992). This type of reference, although troublesome, is not in this case reversible error. *See Sheffield v. United States,* 397 A.2d 963, 965 n. 1 (D.C. 1979), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1071 (1979); *see also United States v. Williams,* 324 U.S.App. D.C. 290, 294, 113 F.3d 243, 247 (1997).

■ Nelson also argues that the prosecutor's repeated use of leading questions requires reversal of his conviction. Almost all of Nelson's objections to the leading nature of the questions were sustained. In this lengthy trial, we can not say that any reversible error occurred.

## V.

### *Porter's § 23–110 Claim*

Porter filed a motion to vacate conviction pursuant to D.C.Code § 23–110 (1998) claiming ineffective assistance of trial counsel based upon allegations that his attorney failed to investigate the case, communicate with him and call three alibi witnesses. In support of the motion, he filed the affidavit of James Simmons stating that he had been with Porter not more than ten minutes before hearing gunshots coming from the playground on the night of the murder and assault. Porter also provided an affidavit stating that he thought he was home for dinner at the time, but that Simmons recalled it differently. The trial court held an evidentiary hearing at which Simmons testified and adopted the statements made in his affidavit.

At the hearing, Porter's trial counsel testified that he had taken over the case from an attorney with the Public Defender Service (PDS) and obtained their investigators' memoranda which he reviewed. He testified that Porter had made two statements, each of which was inconsistent with Simmons' statements.[17] The attorney testified about his visits to the jail to see Porter and about talking with Porter's mother, who said that she was uncertain about her son being at her apartment at the time of the shooting. He testified that Porter told an investigator that Simmons had seen the shooting, but he could not locate him. He also testified that his sister had told PDS investigators that Simmons had been involved romantically with Porter's mother, which he thought would show bias. The attorney testified that his investigator could find no witnesses among those identified who could support Porter's version of the facts.

The attorney further testified about his visits with his client at the jail before the first and second trial dates. After the second trial date was set, trial counsel learned that Porter's fingerprint was on the magazine of a gun found at the scene of the shootings, corroborating eyewitness accounts tending to show that Porter was

---

**17.** In one statement, Porter told PDS investigators that he was with Andre, Tim and Eric that night, while he made another statement to them and to the police that he was at his mother's home. Trial counsel testified that Porter told him that he was at his mother's house with his mother, sister and someone named Donald.

at the scene of the shootings. When trial counsel confronted Porter with the evidence, Porter admitted being present at the scene and having the gun. Based on this information, Porter's trial counsel concluded that he could not put on an alibi defense. He testified that he had spoken with Porter on a number of occasions before the final trial date, but not necessarily at the jail. He also sent Porter a letter outlining the evidence and suggesting that he consider the possibility of seeking a plea offer.

Porter's claim of alibi was also the subject of a *Monroe–Farrell* [18] inquiry during which Porter identified his alibi witnesses as Simmons, Belinda McManus and Herman Jackson. The hearing occurred after the jury was sworn. Porter does not challenge the adequacy of that inquiry on appeal. At the conclusion of that inquiry, Porter decided to proceed with trial counsel and not to put on an alibi defense. However, at the hearing on the § 23–110 motion, Porter claimed that his attorney told him that it would be best not to put on an alibi defense, and he thought he had no choice.

The trial court denied the § 23–110 motion. It recounted first what had occurred at the *Monroe–Farrell* hearing, and Porter's decision to continue with his trial counsel and to forego an alibi defense. Based on these proceedings, the trial court took the position that Porter had waived the claims raised at that time. The trial court then considered each of Porter's claims of ineffective assistance of counsel and found that trial counsel had communicated adequately with Porter and that he and his investigators had investigated the case and had the benefit of the PDS investigation in preparing for trial. The trial court credited trial counsel's version of

events related to Porter's claim of an alibi defense.

■ The record supports the trial court's factual findings. Based on its detailed findings after the evidentiary hearing, the trial court concluded that Porter had failed to demonstrate that his trial attorney's performance was deficient or that he was prejudiced under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard, the defendant must show that counsel's performance was deficient, the proper measure of which is " 'simply reasonableness under prevailing professional norms.' " *White v. United States*, 484 A.2d 553, 558 (D.C.1984) (quoting *Strickland*, 466 U.S. at 687–88 104 S.Ct. 2052) (citations omitted). The second requirement is that counsel's deficient performance prejudiced the defense. Given the trial court's detailed findings after a full evidentiary hearing, and its proper application of the *Strickland* test, we can find no error warranting reversal.

■ Much of Porter's challenge focuses on trial counsel's failure to present alibi witnesses. However, trial counsel showed at the hearing that he hired investigators to follow up on all leads as to alibi witnesses, and none of the witnesses provided information that would have proved helpful to Porter. Essentially, trial counsel determined that it would have been unethical for him to put on the main alibi witness that Porter had in mind, Mr. Simmons, based on the information he had gathered from Simmon's sister and others. The evidence supports that trial counsel pursued the claim, but that the better part of wisdom suggested that the defense not be advanced at trial. There were many in-

---

**18.** *Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Farrell v. United States*, 391 A.2d 755 (D.C.1978).

consistencies about Porter's whereabouts that night among the alleged alibi witnesses and Porter, as well as fingerprint and other evidence showing that he was at the scene. There was also evidence that trial counsel communicated with his client directly and through investigators. Under these circumstances, we find no error in the trial court's conclusion that Porter's claim that his trial counsel was deficient was not made out. In any event, Porter has failed to show how any alleged deficient performance prejudiced his case, particularly considering the government's strong case against him and the many defects in his claimed alibi defense.

## VI.

### *Motion of Porter and Nelson for a New Trial*

Appellants Porter and Nelson filed motions for new trial based on a claim of newly discovered evidence. The claimed newly discovered evidence was based upon a letter from co-defendant Alston in which he claimed that Nelson and Porter had nothing to "do with these charges." At a hearing on the motions, Alston testified that while he was negotiating a drug deal with Hylton and another man, his friend, Andre, and his cousin, Joseph Houston, came from different directions and drew guns. Alston testified that he decided to join in and took a pager from Hylton and that Andre shot Mbaye, and Houston shot Hylton. He testified that he ran away afterwards and that neither Nelson nor Porter were involved. Detective Leech testified at the hearing that Alston had provided a statement after the shooting in which he did not mention Andre or Houston and in fact indicated that he saw Porter at the top of the hill as he was running from the scene. The detective also testified that Nelson stated that he had been with Alston playing basketball at the Kennedy playground when they heard gunshots. Concluding that the evidence would probably not produce an acquittal for Porter or Nelson, the trial court denied the motion.

A new trial may be granted "if required in the interest of justice." Super. Ct. Civ. R. 33. To succeed on a motion for new trial based upon a claim of newly discovered evidence, the movant must show that: (1) the evidence is newly discovered; (2) the moving party was diligent in seeking to obtain the evidence; (3) the evidence is material to the issues involved and not merely cumulative or impeaching; and (4) it is of a nature that it would probably produce an acquittal. *Prophet v. United States,* 707 A.2d 775, 778 (D.C. 1998); *Byers v. United States,* 649 A.2d 279, 287 (D.C.1994) (citation omitted). Where the claimed newly discovered evidence consists of the testimony of a former co-defendant who remained silent at an earlier trial and seeks after conviction to assume the entire blame, we have cautioned the trial court to scrutinize such evidence with great care. *Prophet,* 707 A.2d at 778 (citing *United States v. Jacobs,* 475 F.2d 270, 286 n.33 (2d Cir.1973)). That is because, at that point, the co-defendant " 'has little to fear in attempting to exculpate others involved in the offense by assuming the entire blame.' " *Id.* (citing *Byers,* 649 A.2d at 287). However, each case must be judged on its own particular facts. *Id.* The decision to grant or deny a motion for a new trial is within the trial court's discretion, and we review the trial court's decision for an abuse of discretion. *Id.* (citation omitted). With these principles in mind, we consider the challenge to the trial court's ruling on the motions for new trial.

In this case, the trial court based its ruling on the fourth factor listed above,

concluding that the proffered evidence was not likely to produce an acquittal. We find no abuse of discretion in the trial court's ruling. As previously stated, the evidence of the guilt of Nelson and Porter was quite strong. The surviving victim, Hylton, who had a good opportunity to observe his assailants, picked both Nelson and Porter from a photo array and identified both at trial. One witness, Ms. Williams, testified that Porter, Nelson and Alston ran past her right after the shootings. Another witness, Ms. Fletcher, who was sitting with Ms. Williams that evening, identified Porter as one of the people who ran by and described the other as wearing "plats," a hairstyle consistent with the way that Nelson wore his hair at the time. Porter's fingerprint was found on the weapon recovered at the scene, which is powerful evidence against him. Alston's prior inconsistent statement concerning the events that night could be used to impeach him at any new trial, along with his conviction for the offenses in this case. In his earlier statement, Alston said that he was just entering the park when the shots were fired and that he saw Porter at the top of the hill, while he now claims that only he among this group participated in the crimes, and he did not know Porter's whereabouts that evening. Given the strength of the government's case and that Alston's credibility would be seriously undermined by impeaching evidence, we cannot say that the trial court abused its discretion in concluding that the evidence would probably not produce an acquittal and in denying the motions for new trial. *See Prophet, supra,* 707 A.2d at 778 (citations omitted).

## VII.

### Merger of Offenses

All appellants argue that their two murder convictions (first-degree pre-meditated murder and first degree felony murder) should merge and that their armed robbery conviction related to Mbaye should merge into the felony murder of Mbaye. The government agrees, taking no position on which of the two murder convictions should be vacated; however, it argues that the robbery conviction related to Mbaye should be vacated only if the trial court vacates the pre-meditated murder conviction. We agree. *See Bonhart v. United States,* 691 A.2d 160, 164 (D.C. 1997); *Thacker, supra,* 599 A.2d at 63–64.

For the foregoing reasons, the judgments of conviction appealed from hereby are affirmed except that the case is remanded to the trial court to vacate the merged offenses and for re-sentencing.

*So ordered.*